Waymon J. HERTZLER,
Plaintiff-Respondent,

v.

BURLINGTON NORTHERN
RAILROAD COMPANY,
Defendant-Appellant.

No. 50507.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 25, 1986.

Leonard P. Cervantes, St. Louis, for plaintiff-respondent.

Dennis T. Rathmann, St. Louis, for defendant-appellant.

SIMON, Judge.

This appeal arises out of an action by Waymon J. Hertzler, plaintiff, pursuant to the provisions of the Federal Employers' Liability Act (F.E.L.A.), 45 U.S.C. §§ 51–60 (1982), for injuries sustained as a result of Burlington Northern Railroad Company's, defendant, negligence. Trial was by jury in the Circuit Court of the City of St. Louis, and a verdict was returned for plaintiff in the amount of $40,000. Judgment was entered thereon.

On appeal, defendant raised six points of error. Prior to oral argument, however, defendant moved to withdraw points 3, 4, and 5 from our consideration. The motion is hereby granted. In its three remaining points, defendant claims that the trial court erred: (1) in failing to sustain defendant's motion for directed verdict at the close of evidence because the record is devoid of any proof that defendant's alleged negligence played any part in producing plaintiff's injuries; (2) in submitting the case to the jury because there was no proof of any actual connection between defendant's alleged negligence and plaintiff's injuries; and (6) in overruling defendant's objection to allegedly irrelevant testimony while sus-

taining plaintiff's objection to curative testimony.

To adequately consider defendant's points, we summarize the relevant evidence presented at trial. As defendant concedes, we must view the evidence and reasonable inferences therefrom in a light most favorable to the plaintiff and disregard defendant's contrary evidence. *Anderson v. Burlington Northern Railroad Co.,* 700 S.W.2d 469, 472 (Mo.App.1985).

Plaintiff was employed by defendant as a signal maintainer. A signal maintainer inspects, repairs, and maintains signal lights for the railroad in a designated territory. In January or February of 1980 plaintiff was assigned an M–19 Fairmont Motorcar for use in his job. A motorcar is a four wheel, belt driven vehicle that weighs approximately 500 pounds. It runs on the rails and is used for transporting personnel and materials in railroad maintenance and construction work.

In 1980, it was normal for a signal maintainer to be assigned to a particular motorcar to be used exclusively by him or her. The motorcar assigned to plaintiff was hauled in a pick-up truck from Memphis, Tennessee and delivered to plaintiff in Crystal City, Missouri, his place of residence. It was a "junker" motorcar that had been abandoned and was pulled from the weeds. When plaintiff received the motorcar it was in a state of serious disrepair. The lights were missing, electrical switches were missing, and the motor had to be replaced. It had a housing for a headlight, but no light bulb was inside it.

When plaintiff received the motorcar he was instructed by Mr. Gordon Coker, his superior, to get it in condition and ready to use. Coker told plaintiff to purchase whatever was necessary to get his motorcar into operation. This was not normal operating procedure for defendant. Local purchases were only allowed in emergencies. Ordinarily, if motorcar parts are worn or need to be replaced, a requisition form provided by defendant must be filled out and the needed parts are supplied out of a storeroom in Springfield, Missouri. This procedure is prescribed in defendant's "Maintenance of Way Book of Rules;" a manual outlining policies and procedures for the care and maintenance of motorcars. The rules also mandate that every motorcar be equipped with two lights, a white headlight on the front and a red taillight on the rear.

Plaintiff was successful in repairing his motorcar. However, he was unable to locate the proper standard headlight for his vehicle. He tried to use automobile headlights, but they were too large to fit into the housing unit. Since it was common for a signal maintainer to operate a motorcar at night, it was important that plaintiff have light to see. Because nothing else was available, plaintiff was forced to purchase a tractor implement light so that he would have some sort of light to run at night. The tractor implement light was capable of shining only fifty feet down the railroad track, while the standard lamp normally furnished by defendant was capable of shining 200 feet down the track. Evidence was also presented that the Fairmont Company manufactured a light for its motorcars capable of shining the distance of 300 feet.

The proper headlight on a motorcar is between 4½ to 5 inches in diameter and is customarily directed to shine on the rails so that the operator can keep a lookout for any obstructions on the rails. The light is mounted in a housing unit approximately two and one-half feet above the rail. The housing unit is mounted on a clamp type swivel so that the light can be adjusted up or down or right or left. The unit, however, can only be adjusted from outside the motorcar by using a handle attached to the housing unit.

In January or February of 1980, shortly after purchasing the tractor implement lamp, plaintiff filled out a requisition for a proper light for his motorcar and turned it into his supervisor, Mr. Fred Walker. This was done pursuant to the "Maintenance of Way Book of Rules." Mr. Walker, in turn, sent the requisition for the light to the Springfield storeroom. Walker testified that it normally took thirty to sixty days

before the requested part would be delivered.

On the evening of April 9, 1980, plaintiff was summoned to work on an emergency job by defendant. As a signal maintainer, it was not unusual for him to receive a phone call to work at night after completing his normal 8 a.m. to 4 p.m. shift. Plaintiff was instructed to repair a malfunctioning signal in his territory near Rush Island, Missouri. Plaintiff got his motorcar and proceeded toward Rush Island. Plaintiff had still not received the proper standard headlight that he had ordered for his motorcar, although he had made several inquiries as to when he could expect to receive it. At approximately 8:20 p.m., plaintiff's motorcar struck a piece of wire that had been stretched over the track and derailed. Plaintiff, attempting to jump clear of the motorcar, injured his right hand by striking it forcefully against the motorcar. The injury required emergency medical treatment and surgery, and ultimately resulted in disability to his right hand.

On the night of the accident it was dark but clear. The rails were dry and plaintiff did not notice any mechanical problems with the motorcar. The brakes on the motorcar were in good working condition. Gary Grimes, a special agent with defendant, investigated the accident. He was not able to determine who placed the wire across the track.

The wire that plaintiff struck was a No. 8 iron-clad wire with a black jacket on it; it is the same wire commonly used in defendant's Signal Department to string power lines. The diameter of No. 8 wire is about the same size or just smaller than the diameter of a pencil.

At trial, plaintiff testified that at the time of the accident he was traveling approximately 25 miles per hour. The motorcar was not equipped with a speedometer to measure exactly how fast it was going. According to plaintiff, it is a matter of judgment and common sense as to how fast to operate a motorcar.

Plaintiff estimated that his motorcar would "stop *within* 100 feet" at 30 miles per hour. Gordon Coker, a signal supervisor for defendant who was familiar with the M–19 motorcar, testified that it would take 150 to 200 feet to stop the motorcar when traveling at 30 miles per hour. David Hooker, a signal gang supervisor for defendant, testified that it would take 175 feet to stop a motorcar traveling 30 miles per hour, and it would take 100 feet to stop when traveling 20 miles per hour.

Plaintiff testified that in the past he had experienced trouble running at night because vandals placed spikes, rocks, and creepers on the rail. Defendant's counsel stated during his opening statement that one of the greatest dangers facing motorcar operators is the possibility of being derailed by something placed on the tracks by vandals. However, neither plaintiff nor his supervisors had ever encountered or had knowledge of an incident in which vandals strung wire across the track. Plaintiff stated that he was approximately five to ten feet away from the wire when he first saw the wire. He testified that it was a very short time in between the collision and the time he identified the object in front of him as a wire.

During the course of the trial, plaintiff testified, without objection, that his attorney asked him to obtain two headlights pursuant to the litigation; a standard headlight normally provided by defendant for use in its M–19 motorcar, and a headlight that Fairmont (the manufacturer of the motorcar) supplies with its vehicle. Plaintiff was asked how long it took him to receive the standard light. Defendant objected on the grounds of relevancy, in that, the light was obtained after the accident. The objection was overruled and plaintiff was allowed to testify that he received the standard light within 24 hours. Plaintiff was then asked how long it took him to receive the Fairmont light. Plaintiff testified, without objection, that he received the light within eleven days.

Defendant attempted to have Lloyd Williams, defendant's employee who was assigned plaintiff's motorcar in 1982, testify as to his purchase of a headlight from

an auto parts store in Imperial, Missouri. Plaintiff's counsel objected on the grounds of relevancy. The trial court sustained the objection. Defense counsel made an offer of proof stating that Mr. Williams would have testified that he was able to purchase a light that fit the motorcar, and shined brighter than the Fairmont headlight, from a local auto parts store.

In its first point relied on, defendant contends that the trial court committed reversible error in denying defendant's motion for directed verdict at the close of all evidence because there is no evidence in the record that would permit a jury to find the alleged negligence of defendant played any part, even the slightest, in producing plaintiff's injuries. In support of its contention, defendant argues that "there is no evidence that defendant, as an ordinarily careful and prudent person, could have foreseen any injury to plaintiff." Defendant maintains that "[t]he defect in plaintiff's case is that he failed to show, by substantial evidence or reasonable inferences, that defendant in the exercise of ordinary care, should have known that a vandal would obtain No. 8 copper weld wire, tie it between two poles and stretch it across defendants tracks." In short, defendant contends that plaintiff failed to make a submissible case. We find no merit in defendant's contention.

This action was filed and submitted to the jury under the F.E.L.A.. The Act provides in pertinent part that:

> Every ... railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury ... resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51 (1982).

■ It is well settled that actions brought under the Act are to be decided in accordance with the decisions of the Federal courts. *Headrick v. Kansas City Southern Railway Co.*, 305 S.W.2d 478, 482 (Mo.1957). This includes the issue of whether the evidence is sufficient to make a submissible case. *Wehrli v. Wabash Railroad Co.*, 315 S.W.2d 765, 769–70 (Mo. 1958). Under the Act, if the employer's negligence played any part, however small, in the injury which is the subject of the suit, the employer may be held liable. *Fletcher v. Union Pacific Railroad Co.*, 621 F.2d 902, 909 (8th Cir.1980).

■ In passing on the submissibility of plaintiff's case, it must be remembered that, to the maximum extent proper, questions arising under the F.E.L.A. shall be left to the jury. *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 77 S.Ct. 443, 449–50, 1 L.Ed.2d 493 (1957). Further, little evidence is necessary to create a jury question on the issue of negligence. *Wilmoth v. Chicago, Rock Island & Pacific Railroad Co.*, 486 S.W.2d 631, 634 (Mo. 1972). It is only when there is a complete absence of probative facts to support a conclusion of negligence that a case under the Act may be taken from the jury. *Adams v. Atchison, Topeka & Santa Fe Railway Co.*, 280 S.W.2d 84, 91 (Mo.1955). Of course, "reasonable foreseeability of harm is an essential ingredient of Federal Employer Liability Act negligence." *Gallick v. B. & O. Railroad Co.*, 372 U.S. 108, 83 S.Ct. 659, 665, 9 L.Ed.2d 618 (1963). In this context, F.E.L.A. negligence exists if the employer knew or should have known its standard of conduct was inadequate to protect its employee from injury. *Urie v. Thompson*, 337 U.S. 163, 69 S.Ct. 1018, 1018, 93 L.Ed. 1282 (1949).

Whether or not an employer should ordinarily anticipate or foresee danger in given circumstances is for the jury. *Hughes v. Terminal Railroad Association of St. Louis*, 265 S.W.2d 273, 280–81 (Mo. banc 1954). Judicial review is confined to the reasonableness of the jury finding. We cannot reweigh the evidence merely because the jury could have drawn different inferences or because other results appear more reasonable. *Tennant v. Peoria & P.*

*U. Ry. Co.*, 321 U.S. 29, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944).

With these standards in mind, we move to the gravamen of defendant's first point, which essentially is that plaintiff failed to make a submissible case, in that, defendant could not have reasonably foreseen that someone would string a wire across its track and that it would result in injury.

Plaintiff's petition alleged six specific acts of negligence by defendant. Plaintiff averred that defendant was negligent in the following respects:

a. Defendant failed to furnish Plaintiff with a reasonably safe place in which to work, as the area in which Plaintiff was injured was adjacent to a public park, and no right-of-way fencing was provided by Defendant to keep trespassers from coming onto Defendant's property;

b. Defendant failed to furnish Plaintiff with a reasonably safe place in which to work, as other employees of Defendant had been working in the area in which Plaintiff was injured, and failed to pick up surplus signal wire lying near the track, and thus made it possible for persons unknown to stretch the wire over the tracks;

c. Defendant failed to provide reasonably safe equipment on which Plaintiff was to perform his work, mainly Defendant failed to provide a proper headlight for the motor car assigned to Plaintiff;

d. Defendant failed to properly maintain the equipment on which Plaintiff was to perform his work, as Defendant failed to provide proper lighting to Plaintiff even after Plaintiff made numerous requests for such lighting;

e. Defendant was negligent in requiring Plaintiff to work during hours of darkness on a motor car which Defendant knew had insufficient lighting equipment and could thus not be safely operated at night;

f. Defendant failed to inspect track upon which Plaintiff was injured to ascertain that its employees could safely travel said track in performance of their duties.

However, plaintiff submitted his case only under the theory that defendant failed to provide plaintiff with reasonably safe appliances with which to perform his duties as a signal maintainer, i.e., that defendant failed to provide plaintiff with a safe and proper headlight for his motorcar. On the issue of negligence, the trial court submitted Instruction No. 6, MAI 24.01 [Revision] (3rd ed. 1981), to the jury which read as follows:

Your verdict must be for Plaintiff if you believe:

First, Defendant failed to provide reasonably safe appliances and,

Second, Defendant was thereby negligent, and

Third, Defendant knew, or by using ordinary care should have known of such condition, and that such condition was reasonably likely to cause substantial harm, and

Fourth, such negligence resulted in whole or in part in in injury to plaintiff.

Plaintiff did not submit his case to the jury on the theory that defendant's negligence caused or contributed to cause the wire to be strung across its tracks, nor did plaintiff submit his case on the theory that defendant was negligent in failing to provide a safe work place, viz., that it failed to inspect its tracks. Rather, plaintiff submitted his case to the jury on the proposition that defendant was negligent in failing to provide plaintiff with the proper headlamp for his motorcar. It is this omission that must gauge the foreseeability of injury. In other words, the issue is not, as defendant contends, whether it should have foreseen injury caused by a wire strung across its track. Based on the theory of negligence submitted to the jury, the issue is whether defendant should have foreseen that its failure to provide plaintiff with the proper headlamp for his motorcar played any part in his injury.

The record is replete with evidence that would support a finding that defendant knew or should have known that plaintiff

could have been harmed without the proper headlight. By its own rules, defendant requires all motorcars to be equipped with headlights. Plaintiff testified that the light is used to look for obstructions on the rail that might cause derailment. Plaintiff testified further that on several prior occasions he had encountered obstructions such as spikes, rocks, and creepers placed on the rails. Additionally, defendant's division supervisor testified that the headlight was required so that any obstructions on the rails or in between the rails could be observed while running at night. Defendant's counsel, in his opening statement, stated that one of the big dangers to signal maintainers who operate motorcars is objects placed on the rails by vandals.

■ While defendant may not have actually foreseen that the wire would be stretched across its tracks; this was not required. It is unnecessary that the party charged with negligence should have anticipated the very harm that occurred. All that is necessary is that it knew or ought to have known that there was an appreciable chance some injury would result. *Tharp v. Monsees*, 327 S.W.2d 889, 894 (Mo. banc 1959); *Guthrie v. City of St. Charles*, 152 S.W.2d 91, 98 (Mo. banc 1941). We conclude that the jury's finding was reasonable. Defendant should have foreseen that inadequate lighting could result in injury. Point denied.

Defendant's second point alleges that the trial court erred in submitting the case to the jury because there was no causal connection between any alleged negligence of defendant and plaintiff's injury. Defendant argues that even with a light that shined 300 feet, plaintiff could not have seen the wire, recognized it, reacted, braked the motorcar and stopped before striking the wire. Defendant's argument is premised on several factors. First, the record reflects that the shortest distance at which plaintiff could stop traveling 30 miles per hour was 100 feet. Second, plaintiff testified that he first saw the wire when he was five or ten feet from it even though the light he had shined 50 feet.

Third, plaintiff testified on cross-examination that before he struck the wire he thought it was a spider web. Defendant argues from this evidence, that a light that shined 300 feet (6 times the distance of the light plaintiff had) would have only allowed plaintiff to spot the wire 30 to 60 feet away, well short of the 100 feet stopping distance. Defendant maintains further that even with a better light, plaintiff would still have regarded the wire as a spider web and would not have braked until too late.

Plaintiff maintains that the jury could reasonably infer that defendant's failure to provide him with the proper and adequate light was the cause of his accident. Plaintiff argues that evidence adduced at trial showed that the standard lamp normally furnished by defendant had the capacity to shine two hundred feet down the track; that a motorcar traveling at 30 miles per hour could stop within one hundred feet; and that at the time of the accident plaintiff was traveling approximately 25 miles per hour. Plaintiff argues from this evidence that if defendant had provided the standard headlight he would have been able to see the obstruction in his path 200 feet away, in ample time to stop within 100 feet or less.

■ In an action under the F.E.L.A. it is incumbent upon the plaintiff to plead and prove both that the defendant was negligent and that such negligence was a proximate cause of the injury sustained. *Adams v. Atchison, Topeka & Santa Fe Railway Co.*, 280 S.W.2d 84, 91 (Mo.1955). Plaintiff is required to present probative facts from which negligence and causal relationship may reasonably be inferred. *Id.* (citing *Tennant v. Peoria*, 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520 (1944)). The plaintiff's burden of establishing causal connection is met when there is evidence, even though entirely circumstantial, from which the jury may with reason make the inference that defendant's negligence contributed in any way to plaintiff's injury. *Wilmoth v. Chicago, Rock Island & Pacific Railroad Co.*, 486 S.W.2d 631, 634 (Mo.

1972). We believe that plaintiff's evidence amply sustained this burden. We fully understand the inferences defendant wishes us to draw. However, if there is an evidentiary basis for a jury's verdict, as there is in the present case, we cannot substitute for it another conclusion that may be more reasonable. *Lavender v. Kurn,* 327 U.S. 645, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946).

■ It is true that there is evidence tending to show that it would have been physically and mathematically impossible for plaintiff to have avoided the accident even if he had had the proper headlight. But there was also evidence that showed the proper light would have shined 200 hundred feet and that plaintiff could have brought his car to a stop traveling 30 miles per hour *within* 100 feet. Plaintiff testified that he was traveling only 25 miles per hour. Whether plaintiff could have seen the wire with the proper light was a question of fact for the jury. *See Elliot v. Missouri Pacific Railroad Co.,* 227 Mo. App. 225, 52 S.W.2d 448, 452 (1932); *Moore v. Chicago, B & Q. R. Co.,* 28 F.Supp. 804, 805 (W.D.Mo.1939). The jury could have inferred that plaintiff would have seen the wire within the 200 feet range of the proper light. *Hauck v. Kansas City Public Service Co.,* 239 Mo.App. 1092, 200 S.W.2d 608, 614 (1947). Thus, there is evidentiary support that plaintiff could have seen the wire and stopped in time to avoid the collision.

Notwithstanding, defendant argues that this inference was pure speculation and conjecture. It is no answer to say that the jury's verdict involved speculation and conjecture. "Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference." *Lavender,* 66 S.Ct. at 744. Reversible error may only be predicated on a complete absence of probative facts to support the jury's verdict. But where, as here, there is an evidentiary basis for the verdict, the jury may discard or disbelieve whatever facts are inconsistent with its conclusion. *Id.* at 744. Point denied.

In its final point defendant launches a two pronged attack. Under its first prong, defendant contends that the trial court erred in allowing plaintiff to testify, over objection, that he "ordered and received a headlight from Fairmont" after the law suit was filed. Defendant argues that there was no proof that the same light could have been acquired in the same amount of time prior to the accident and, therefore, the evidence was irrelevant and the objection should have been sustained. Defendant's contention is not well taken.

During the course of trial plaintiff testified, without objection, that he obtained three lights at his attorney's request pursuant to the litigation. The first light, identified as A, was a standard light normally provided by defendant for use in its motor cars. The second light, identified as B, was a Fairmont (the manufacturer of the motor car) light. The third light, identified as C, was a tractor implement light similar to the one plaintiff was using on the night of the accident.

Plaintiff was asked how long it took him to receive Light A, the standard light, after he had ordered it. Defendant objected on the grounds of relevancy in that the light was ordered and received after the accident. The objection was overruled and plaintiff testified that Light A was received within 24 hours. Plaintiff was then asked how long it took him to receive Light B, the Fairmont light, after he ordered it. Defendant did not object. Plaintiff testified that he received Light B within eleven days. Plaintiff was not asked how long it took him to receive Light C.

In its motion for new trial, defendant claimed that the trial court erred:

In overruling defendant's objections to certain testimony of plaintiff during the trial of this cause, and admitted into evidence over defendant's objection; that testimony concerning plaintiff ordering *a headlight from Fairmont* and receiving same within 11 days sometime in 1984

was irrelevant and prejudicial and was admitted without proper foundation and defendant's objection thereto should have been sustained. (emphasis ours). The admission of plaintiff's testimony concerning the headlight from Fairmont, Light B, is also asserted as error in defendant's final point on appeal. However, because there was no objection to this testimony at the time the testimony was given, this point is not preserved for appellate review. *Behlman v. City of Florissant*, 548 S.W.2d 619, 621 (Mo.App.1977).

In the argument section of defendant's brief, it also asserts error in the admission of plaintiff's testimony concerning Light A, the standard light. This testimony was objected to at trial. However, it was neither presented as a basis for a new trial in defendant's motion therefor, nor is it asserted as error in its point relied on. Accordingly, it will not be considered. An objection to the admission of evidence is not preserved for appellate review if it is not presented for the trial court to consider in a motion for new trial. *Stafford v. Lyon*, 413 S.W.2d 495, 497 (Mo.1967).

We now turn to defendant's second prong of attack. Defendant alleges reversible error in that the trial court did not permit defendant's witness, Lloyd William, to testify as to his purchase of a headlight after the accident under the doctrine of curative admissibility. Defendant made an offer of proof to the effect that Williams would have testified that, after the accident, he was able to purchase a headlight for a motorcar that shined brighter than the Fairmont headlight from a local auto parts store in Imperial, Missouri. Defendant claims that the proffered testimony by Williams should have been admitted into evidence under the doctrine of curative admissibility since plaintiff was allowed to testify as to his procurement of lights after the accident.

█ The doctrine of curative admissibility permits a party to respond to inadmissible evidence introduced by an opposing party with *evidence of the same type or character*, if the introduction of such

evidence is necessary to remove an unfair prejudice brought about by the earlier admission of inadmissible evidence. *Gevermuehle v. Geimer*, 619 S.W.2d 320, 322 (Mo.App.1981). *Evidence of the same type or character* is limited " 'to the evidential fact to which the original evidence was directed.' " *Ferguson v. Missouri Pacific Railroad Company*, 442 S.W.2d 549, 555–56 (Mo.App.1969) (quoting *Dorn v. St. Louis Public Service Co.*, 250 S.W.2d 859 (Mo.App.1952)). The doctrine does not permit the indiscriminate introduction of like evidence touching other issues. *Ferguson*, 442 S.W.2d at 556.

█ In the present case, we conclude that the doctrine of curative admissibility is inapplicable. Assuming, without deciding, that plaintiff's testimony was inadmissible because it pertained to the procurement of lights after the accident, the proffered testimony by defendant was not of the same type or character. The proffered testimony by defendant was not limited to the evidential fact to which the original evidence was directed. The issue raised by the original "inadmissible" testimony by plaintiff was whether or not defendant could have obtained a proper light between the time of plaintiff's request and the accident. Defendant did not attempt to meet that evidential fact. Defendant did not undertake to contradict or explain plaintiff's testimony. Instead, defendant raised a distinctly disparate issue—whether plaintiff could have obtained a brighter light before the accident.

As the admission of curative evidence ordinarily rests in the sound discretion of the trial court, *Gevermuehle*, 619 S.W.2d at 322, we conclude that the trial court did not abuse its discretion.

Judgment affirmed.

GARY M. GAERTNER, P.J., and STEPHAN, J., concur.