**Robert GILLIAM, Respondent,**

**v.**

**CHICAGO & NORTH WESTERN TRANSPORTATION CO.,
Appellant.**

**No. WD 46408.**

Missouri Court of Appeals,
Western District.

July 6, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 31, 1993.

156

David M. Harding, Jeffrey S. Bay, Van Osdol, Magruder, Erickson and Redmond, Kansas City, for appellant.

John T. Peak, Hubbell, Sawyer, Peak & O'Neal, Kansas City, John A. Walsh, Jr., John D. Schneider, St. Louis, for respondent.

Before SHANGLER, P.J., and TURNAGE and KENNEDY, JJ.

TURNAGE, Judge.

Robert Gilliam filed suit under the Federal Employers' Liability Act (FELA) for damages resulting from injuries he suffered while working for Chicago & North Western Transportation Co. (C & NW). The jury returned a verdict in favor of Gilliam for 1.5 million dollars and the court entered judgment thereon. On this appeal C & NW raises a number of points of error concerning the amount of damages, the instructions, and the exclusion of evidence. Affirmed.

At the time of trial Gilliam was 34 years of age and had worked for C & NW over 13 years as a switchman. On the night of December 13, 1989 Gilliam was working in the C & NW short-line yard in Des Moines, Iowa as part of a three-man crew. As a switchman, Gilliam's duty was to throw switches so that railroad cars could be placed on the proper track. On the night in question the temperature was about zero degrees and there was one to two inches of snow on the ground.

Gilliam stated that he was riding on an engine when it approached switch No. 4 and he noticed that the switch would have to be changed so that the engine could deliver cars on another track. Gilliam stated that he had thrown this switch about 45 minutes earlier with no difficulty. Gilliam stated that he approached the switch and inspected it as he was required to do and found nothing wrong. He pulled the switch handle until he felt resistance which was a usual occurrence in throwing a switch. After feeling the resistance, Gilliam stated that he repositioned his feet and pulled the switch handle with both hands. Gilliam stated that he pulled the switch handle in the manner required by the C & NW rules and denied that he had "jerked" the switch. As he pulled, the switch locked up and his body was snapped back against his own momentum. He stated that he felt a pinch or twinge between his shoulder blades at that time.

At trial, Gilliam presented an expert in railroad engineering and design who inspected switch No. 4 on which Gilliam stated he was injured. The expert testified that switch No. 4 locked up when Gilliam attempted to throw it because a rod which connected the moving parts of the switch locked against a tie. The expert said the rod was locked against the tie because the rod was not properly maintained and adjusted to keep it clear of the tie. He also said the rod locked against the tie because the rails going into and out of the switch area were not properly fitted with rail anchors to keep the rails from shifting. The shifting of the rails moved the rod attached to the rails so that it became locked against a tie. The expert further testified that the drop in temperature would cause the rails to move slightly which could account for the rod moving the last fraction of an inch to cause the rod to bind against the tie. He stated that rail anchors would have prevented the rails from moving as the temperature dropped and also would prevent their movement as a result of traffic over the rails. There was evidence that C & NW's operating rules required that the track in the area of switch No. 4 have six box anchors on the rails but actually there was only one anchor and it was not located properly to be effective.

Gilliam testified that as a result of his injury he had a "winging" of the left shoulder. He stated that he has pain every day. He is very self-conscious of his appearance because of the way his shoulder blade ex-

tends out from his body. He stated that he could not do many of the things that he used to do such as ride horses, engage in various sports, or go swimming. He cannot return to his railroad job because he cannot lift or pull with his left arm.

Gilliam presented an economist who testified that his past lost earnings totaled $65,468 and that his future lost earnings amounted to $912,426.

Gilliam was treated by a number of doctors in Des Moines and after he moved to Kansas City he consulted Dr. Bernard Abrams, a neurologist. Dr. Abrams testified that when Gilliam attempted to throw the switch and it locked up that Gilliam suffered an injury to the long thoracic nerve which resulted in paralysis of the serratus anterior muscle. Dr. Abrams explained that the long thoracic nerve supplies impulses to the serratus muscle and as a result of the injury the nerve was no longer able to tell the muscles to contract. The serratus anterior muscle holds the scapula to the chest wall. When the scapula or shoulder blade is winged the scapula extends out from the back causing it to have the appearance of a wing. Dr. Abrams stated that Gilliam was unable to lift his left arm above the horizontal. He stated that the condition was permanent and that there is no viable surgical procedure which would correct the winging of Gilliam's left shoulder blade. He testified that Gilliam has suffered pain since the accident and will continue to suffer pain from now on. He said the cause of pain is a stretching of the muscles as a result of the winging of the shoulder. Dr. Abrams further testified that Gilliam had undergone therapy for his shoulder but that he had reached the maximum result from this therapy. He stated that the conditions that he described were permanent.

At the time of trial Gilliam was working at a minimum wage job which did not require any pulling or lifting with the left hand.

C & NW first complains of an incident which involved the jury when it retired to deliberate. The court informed the attorneys that one member of the jury would have to leave at 4:30 p.m. It was then 3:30 p.m. on Friday afternoon and the court said that it did not know if the jury could reach a verdict in an hour, but to avoid calling the jury back on Monday, an alternate juror would be sent to the jury room. The court inquired if the attorneys had any objection and both sides objected. Thereupon, the court sent one of two alternate jurors to the jury room with the original 12 with instructions that he was to simply sit and observe and was not to say anything.

At 4:30 p.m., the jury sent word that the juror who had to leave at 4:30 was ready to leave. The court had the jury return to the courtroom. The court ascertained that a verdict had not been reached and was assured by the foreman that the alternate juror had not participated in the deliberations. Thereupon, the court stated out of the hearing of the jury that he was going to substitute the alternate for the juror who had to leave and inquired if there were any objections. Gilliam's attorney objected but the attorney for C & NW stated "no objection." The alternate juror was substituted and the jury thereafter returned a verdict.

■ C & NW contends that the court erred in allowing the alternate juror to be present in the jury room while deliberations took place and further erred in excusing a juror and substituting an alternate after the deliberations had proceeded for an hour. In its motion for new trial C & NW only complained of excusing a juror and substituting an alternate. The complaint that the court sent the alternate to the jury room is not preserved for review because it was not mentioned in the motion for new trial. *State ex rel. Missouri Hwy. & Transp. Comm'n v. Jim Lynch Toyota, Inc.*, 830 S.W.2d 481, 488[13, 14] (Mo.App. 1992). C & NW requests that this court review that matter for plain error but this court does not find that the matter rises to the level of manifest injustice or a miscarriage of justice which would warrant invocation of the plain error rule. Rule 84.13(c).

■ As to the complaint that the court substituted an alternate for a regular ju-

ror, the attorney for C & NW stated that he had no objection. This not only constituted a failure to object but amounted to a positive acquiescence in the action of the court in substituting the alternate for the regular juror. As stated in *Sansone v. Londe,* 753 S.W.2d 339, 342[5] (Mo.App. 1988), "A party may not even tacitly, much less expressly, acquiesce in the procedure proposed by the trial court and complain for the first time after an adverse result." Having expressed its acquiescence in the court's action, C & NW may not now complain that the court took the action in which it acquiesced.

■ C & NW next contends that the court erred in failing to give its instruction which it says submitted a failure by Gilliam to mitigate his damages.[1] Contrary to this contention, the instruction submitted contributory negligence in plain terms for failure to seek rehabilitative or work hardening treatment or to seek employment after the accident. The court gave a contributory negligence instruction in the form of MAI 32.07 which submitted that Gilliam failed to properly throw the switch or failed to properly inspect it.

The offered instruction is not a proper contributory negligence instruction because it is not in the form of MAI to submit contributory negligence in a FELA case. Nor does the offered instruction correctly submit the issue of mitigation of damages. C & NW confuses contributory negligence with mitigation of damages. In *Evinger v. Thompson,* 364 Mo. 658, 265 S.W.2d 726, 735 (1954), the court stated that the law places on a plaintiff " 'the duty to act as an ordinarily prudent man to minimize avoidable consequences,' as to earnings." (quoting *Phegley v. Graham,* 358 Mo. 551, 215 S.W.2d 499, 505 (1948)). In *Stipp v. Tsutomi Karasawa,* 318 S.W.2d 172, 175[7] (Mo. 1958), the court held that one who suffers injury is bound to exercise reasonable care

in seeking medical aid and if the injury is aggravated by reason of the failure to seek medical aid the person will not be permitted to recover for the injuries and disability which might have been prevented by reasonable efforts on his own part.

The offered instruction did not instruct the jury that it must find that Gilliam failed to act as an ordinarily prudent man to minimize avoidable consequences or that he could not recover for injuries and disability which might have been prevented by reasonable efforts on his own part. Therefore, the instruction did not submit mitigation of damages and was correctly refused.

■ C & NW next contends there was no evidence that it had any notice of the unsafe condition of switch No. 4. The evidence from Gilliam's railroad expert has been set out above which details the failure to place anchors on the rails entering and leaving the switch. This failure allowed the rails to move which caused the switch to lock up. There was evidence that C & NW knew that it did not have the required number of anchors on the rails as shown by its answer to interrogatories. Thus, C & NW's argument that it had no notice of the conditions which caused the No. 4 switch to lock up is refuted by the evidence. C & NW's argument is that it had no notice of any defect because Gilliam and others stated they had operated the switch that night without difficulty. From the testimony of the railroad expert the jury could have found that Gilliam's injury resulted from the failure to anchor the rails entering and leaving switch No. 4. Because of falling temperatures the absence of anchors allowed the rails to move enough to cause the switch to lock up. It was held in *Hertzler v. Burlington Northern R. Co.,* 720 S.W.2d 762, 766[2, 3] (Mo.App.1986), that little evidence is necessary to create a jury question on the issue of negligence. In this case, there was more than a little

---

1. C & NW's refused instruction read:
   You must find plaintiff contributorily negligent if you believe:
   First, either, plaintiff failed to seek rehabilitative or work hardening treatment, or plaintiff failed to seek employment after the December 13, 1989, accident, and

   Second, plaintiff in any one or more of the respects submitted in paragraph First was thereby negligent, and
   Third, such negligence of plaintiff directly contributed to cause any damage plaintiff may have sustained.

evidence from which the jury could have found that C & NW knew of the condition of the rails which allowed them to move and should have known that the movement of the rails could result in a switch locking up. C & NW should further have known this could cause injury to a switchman who was attempting to throw the switch. In a FELA case, negligence exists "if the employer knew or should have known its standard of conduct was inadequate to protect its employee from injury." *Id.* at 766[2, 3]. There was sufficient evidence that C & NW had notice of the unsafe condition in switch No. 4 which caused injury to Gilliam.

■ *Hertzler* held that whether or not an employer should ordinarily anticipate or foresee danger under given circumstances is for the jury. *Id.* at 766[2, 3]. Review in this court on that question is confined to the reasonableness of the jury finding. *Id.* Under the above evidence the jury could reasonably have found that the rails entering and leaving switch No. 4 were not anchored and that this allowed the rails to move and cause the switch to lock up. This satisfied the foreseeability requirement.

· C & NW next contends that the court erred in giving Gilliam's verdict director which was MAI 24.01 because it allows the jury to find for Gilliam if C & NW failed to provide reasonably safe conditions for work or reasonably safe appliances. C & NW makes some argument that Gilliam failed to prove that C & NW failed to provide reasonably safe appliances but the discussion above concerning the conditions of the tracks and switch No. 4 answers that contention. C & NW principally contends that the word "appliance" used in MAI 24.01 is improper because appliances refer only to parts of cars, trains and locomotive engines in the safety appliance chapter of FELA and not to switches and tracks.

■ 45 U.S.C. § 51 (1986) of FELA imposes liability upon railroads for injury to employees resulting from "any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." In contrast, liability for a violation of the safety appliance chapter of FELA is strict liability and is not based on negligence. A suit based on that theory is submitted by MAI 24.03. Gilliam's cause of action was not based on strict liability but was founded on negligence. FELA gave Gilliam a cause of action for negligence if the railroad did not provide reasonably safe appliances. Under the definition of "appliance" in Webster's Third New International Dictionary (1971), appliance is a tool, instrument or device specially designed for a particular use. Under this definition rails and switches in a railroad yard would be an appliance. MAI 24.01 correctly provides as a basis of negligence the failure to provide reasonably safe appliances to workers under 45 U.S.C. § 51.

■ C & NW next contends the court erred in refusing the offered testimony of a witness who would have testified that sometime before the incident in which Gilliam was injured the witness had observed Gilliam jerking a switch in violation of company rules. This was offered to refute Gilliam's testimony that Gilliam had followed company rules in trying to throw the switch. In short, it was offered to show that Gilliam was negligent at the time he was injured. In *McComb v. Vaughn*, 358 Mo. 951, 218 S.W.2d 548, 552[6–8] (1949), the court stated:

> The courts have generally ruled inadmissible on the issue of negligence on the part of defendant in a negligence action, or of contributory negligence on the part of plaintiff, at the time of the injury complained of, evidence of similar prior acts of negligence.

Under the well-settled rule stated in *McComb*, evidence that Gilliam was negligent on a prior occasion was not admissible to prove that he was negligent at the time of the injury. The court correctly excluded the evidence.

■ C & NW next contends that the court erred in refusing to grant a new trial because two witnesses committed perjury. C & NW contends that in deposition testimony the other two members of Gilliam's crew testified that they thought Gilliam was injured on switch No. 2. When the two crew members testified at trial, they

stated that they were not sure which switch Gilliam attempted to throw when he was injured. Although C & NW terms this change of testimony as perjury, contradictions between in-court testimony and testimony given at a deposition simply present matters for the trier of fact to assess. Although a statement made prior to trial is admissible as impeachment, it does not destroy trial evidence. *Joplin v. Missouri Comm'n on Human Rights*, 642 S.W.2d 370, 372[3, 4] (Mo.App.1982). There is no basis to find that these two witnesses committed perjury or that this should be a ground for the grant of a new trial.

C & NW next contends that the trial court erred in not setting aside the verdict and granting a new trial because the verdict was not based on any rational assessment of the evidence. C & NW contends that Gilliam does not expect any future medical care and has received all the physical therapy he will receive for his injury. C & NW completely overlooks the evidence concerning the nature and extent of Gilliam's injury, his past and future lost wages, his appearance as a result of the winging of his left shoulder and the past and future pain which Gilliam must endure. It also overlooks the testimony of Gilliam and his physician that he cannot do any lifting or pulling with his left arm and that any activity, whether working or socially, is permanently limited by the condition of his left shoulder. In *Moore v. Missouri Pacific R. Co.*, 825 S.W.2d 839, 846[12] (Mo.banc 1992), the court stated "The assessment of damages by a jury will not be reversed if there is substantial evidence to support that verdict and '[i]f the damages were returned on any rational assessment of the evidence.'" (quoting *Denney v. Milgram Food Stores, Inc.*, 614 S.W.2d 323, 324–25 (Mo.App.1981)).

This court cannot say that the verdict is not supported by substantial evidence or that the damages were not returned on a rational assessment of the evidence.

C & NW next contends that the verdict is so grossly excessive to show bias and prejudice on the part of the jury. In *Foltz v. Burlington Northern R.R. Co.*,

689 S.W.2d 710, 718[13–15] (Mo.App.1985), this court held that the mere size of a verdict alone is not enough to show bias and prejudice but some error committed during the trial must be revealed in the record which points to jury bias and prejudice. C & NW does not point to any trial error which would show bias or prejudice.

C & NW next contends the trial court erred in not ordering a remittitur. In *Frank v. Environmental Sanitation Management, Inc.*, 687 S.W.2d 876, 885 (Mo. banc 1985), the court stated that the matter of excessiveness is to a great extent in the province of the trial court. C & NW ignores the evidence which supported the verdict which included the fact that Gilliam had economic damages of between $900,000 and $1,000,000 in addition to the disability, pain, and disfigurement which he suffered. This court cannot say that the trial court erred in refusing to order a remittitur.

C & NW next contends the court erred in giving Gilliam's verdict form because the form failed to require the jury to find a specific percentage of fault on the part of Gilliam. C & NW contends that the instructions based on comparative fault should have been given rather than instructions based on FELA. The form about which C & NW complains is MAI 8.02. The committee comment following that instruction states that the submission of comparative fault in a FELA case differs from the submission of comparative fault in cases based on Missouri law. The committee points out that under 45 U.S.C. § 53, the jury diminishes damages in proportion to the employee's negligence. On the other hand, in comparative fault under Missouri law, the jury determines total damages and the plaintiff's percentage of fault but the judge diminishes the total damages by the percentage of fault found on the part of the plaintiff. Here, the verdict form was in compliance with MAI 8.02. In *Karashin v. Haggard Hauling & Rigging, Inc.*, 653 S.W.2d 203, 206[7] (Mo. banc 1983), the court stated "If a Missouri Approved Instruction is applicable, such instruction must be given to the exclusion of all oth-

ers." Here, MAI 8.02 was applicable and was therefore required to be given.

 Finally, C & NW contends the giving of the verdict form violated its due process rights. The mention of a constitutional violation occurred in the instruction conference in which C & NW's counsel stated that the instructions were not similar to most comparative fault instructions and that this was a violation of C & NW's constitutional rights of due process. Counsel further stated that Missouri has comparative fault instructions and that FELA is based on pure comparative fault and the Missouri instructions on comparative fault would be more appropriate for a FELA case. C & NW in its motion for new trial expanded the constitutional challenge slightly by adding that the FELA verdict form should allow the jury to apportion a percentage of fault to Gilliam. In *State ex rel. Spradling v. Bondurant*, 501 S.W.2d 527, 530 (Mo.App.1973), this court stated the rule requiring the facts which constitute a constitutional violation to be set out as follows:

> [I]t is not sufficient that certain sections of the Constitution be set out and the assertion made that rights thereunder have been violated but the facts which constituted such violation must be set out. (quoting *Kansas City v. Reed et al.*, 358 Mo. 532, 216 S.W.2d 514 (1948)).

It might be questioned whether or not C & NW raised a constitutional question at the first opportunity, but be that as it may, the challenge did not meet the requirement that the facts which constituted a violation of C & NW's constitutional rights be set out. All that was stated was the bare conclusion that the failure to require the jury to state the percentage of fault which it assessed against Gilliam on the verdict form violated its constitutional rights. There was no attempt to state facts which demonstrated how this failure deprived C

& NW of due process of law. C & NW has failed to properly raise a constitutional question, and therefore, no issue is presented for review on that question. *Callier v. Director of Revenue*, 780 S.W.2d 639, 641[3] (Mo. banc 1989).

 The judgment is affirmed.[2]

All concur.

---

**2.** Gilliam requests in his brief that this court order that the judgment bear interest from the date it was entered. Gilliam states that the question of interest on judgments is frequently a source of disagreement in FELA cases. However, the record does not indicate that this question was presented to the trial court. In *Bunt-*

*ing v. McDonnell Aircraft Corporation*, 522 S.W.2d 161, 168[11] (Mo. banc 1975), the court held that "a party cannot request relief on appeal not sought in the trial court." Having failed to request relief in the trial court, Gilliam may not obtain relief in this court.