Eugene DILLARD, Respondent,

v.

The ATCHISON, TOPEKA and SANTA FE RAILWAY COMPANY, Appellant.

No. WD 48556.

Missouri Court of Appeals, Western District.

June 21, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 2, 1994.

Application to Transfer Denied Sept. 20, 1994.

Douglas R. Dalgleish, Jeffrey P. Ray, L.J. Buckner, Jr., Lathrop & Norquist, Kansas City, for appellant.

Steven L. Groves, Schlichter, Bogard & Denton, St. Louis, for respondent.

Before TURNAGE, C.J., and FENNER and ELLIS, JJ.

TURNAGE, Chief Judge.

Eugene Dillard filed suit against the Santa Fe Railway Company for damages for personal injury pursuant to the Federal Employees Liability Act, 45 U.S.C. §§ 51 *et seq.* (FELA). The court entered judgment on the jury verdict in favor of Dillard for $125,-000. On this appeal Santa Fe contends Dillard failed to make a submissible case and the court erred in failing to give a withdrawal instruction. Reversed and Remanded.

Dillard had worked for Santa Fe for about 14 years. In August 1991 he was assigned to work in the Argentine Yards as a carman inspector. The duty of a carman inspector is to inspect railroad cars in a yard to determine if there are any defects in the cars which would make them unsafe to operate. The carman walks along the side of the track and when necessary between the tracks to inspect the cars and their attached appliances.

On August 6, 1991, Dillard reported for work at about 8:00 a.m. and put on raingear including rubber overshoes because it was raining. Dillard and his partner George Mills went to the "house yard" area where they inspected two or three cuts of cars. The two men performed their inspection by one starting at one end of the string of cars and the other starting at the other end. The two would walk down the same side of cars and when they reached the halfway point they would perform a "horse shoe." This involved climbing up the ladder of a car, crossing the crossing board on the top, and climbing down the ladder on the other side.

At about 11:00 a.m. Dillard and Mills moved to house yard track 8. Dillard started at the west end of a string of cars on track 8 and when he had reached the mid-point in the string of cars, he indicated to Mills that he had reached the mid-point and climbed up the ladder of a grain hopper car. Dillard crossed the top of the car and started to climb down the ladder on the other side when his foot slipped. The slip caused Dillard's feet to leave the ladder and all of his weight was thrust onto his left hand and wrist because he only had one hand on the ladder at that time. Immediately after he slipped, Dillard noticed that he had mud, grease and other materials on his foot. Dillard reported the accident to his supervisor during the lunch hour and filled out an accident report.

The house yard where Dillard was working when he slipped is an area where cars are received and inspected. Santa Fe had put chat or ballast in some areas of the yard. However, Dillard and Mills testified there was inadequate ballast in the house yard which caused mud to form when it rained. Mills described the area where Dillard was working when he slipped as having the worst drainage in the house yard. Dillard and Mills testified that numerous complaints over a long period of time had been made to supervisors concerning the conditions in the yard caused by poor drainage and inadequate ballast. Dillard's supervisor admitted that he had received complaints regarding the drainage and yard conditions prior to 1991. In addition, the foreman in charge of maintaining the Argentine Yards testified that water pooled in the house yards.

Dillard experienced pain in his left wrist and was treated for a sprained wrist for about a month. When that treatment proved unsuccessful, he was referred to an orthopedic surgeon and Dillard underwent two surgeries. There was evidence that Dillard had lost about 50% of the motion in his left wrist. Dillard further testified that he had constant pain in his wrist and there was evidence from his physician that the condition of his wrist is permanent. However, Dillard's physician had released him to return to work without limitation.

Santa Fe first contends that Dillard failed to make a submissible case because Dillard failed to identify the exact place where his shoes accumulated mud. Santa Fe argues that it was necessary in order to support a finding of negligence on its part that Dillard identify the exact spot in the house yards where his shoes became muddy.

■ In this case Dillard was required to establish all of the elements of a common law negligence action. *Ewing v. St. Louis Southwestern Ry.,* 772 S.W.2d 774, 775–76[1] (Mo.App.1989). However, Santa Fe does not contend that Dillard failed to prove the elements of negligence. It contends only that Dillard failed to prove that the mud on his shoes came from its yard.

In *Hertzler v. Burlington Northern R.R.,* 720 S.W.2d 762, 766[1] (Mo.App.1986), the court stated that in a FELA case the employer may be held liable if its negligence played any part, however small, in the employee's injury. The court further stated that in considering the submissibility of a case, questions arising under FELA shall be to the maximum extent possible left to the jury. Id. at 766[2, 3]. The court further observed that little evidence is necessary to create a jury question on the issue of negligence. The court stated that in a FELA case, "negligence exists if the employer knew or should have known its standard of conduct was inadequate to protect its employee from injury." *Id.* Further, "Whether or not an employer should ordinarily anticipate or foresee danger in given circumstances is for the jury," and "Judicial review is confined to the reasonableness of the jury finding." *Id.*

In *Zibung v. Union Pacific R.R.,* 776 S.W.2d 4, 5[1] (Mo. banc 1989), the Court held that in a FELA action the plaintiff is entitled to all favorable inferences from the evidence.

■ Applying the above principles to the facts in this case reveals that there was mud in the house yards caused by poor drainage and insufficient ballast. Santa Fe had notice of these conditions for a long time prior to Dillard's injury. Although Dillard did not identify a precise spot as the source of the mud on his shoes, the evidence was that he was working in the house yards for about three hours prior to his injury and that he slipped because of mud on his shoes. From this evidence the jury was entitled to infer that the mud on Dillard's shoes came from the house yards. The evidence was sufficient to allow the jury to infer that Dillard got mud on his shoes in the house yards, that the mud caused his shoes to become slick, and those conditions caused his slip. There was evidence from which the jury could find negligence for failure to place sufficient chat or ballast in the yards to prevent the ground from becoming muddy which would cause worker's shoes to become muddy and slick which made it more likely that they would fall and be injured. There was sufficient evidence to make a submissible case.

■ The dispositive point raised by Santa Fe concerns the failure of the court to give instruction "A" offered by Santa Fe which would have withdrawn from the jury's consideration the issue of Dillard's future loss of wages. While Santa Fe failed to set out instruction "A" in the argument portion of its brief as required by Rule 84.04(e), the instruction was offered during the instruction conference and Santa Fe preserved its objection to the refusal of this instruction in its alternative motion for a new trial. Its objection has been carried forward on this appeal in its point relied on and the instruction is contained in the legal file. While this court does not condone the failure to set out instructions which are the subject of a point on appeal in the brief as required by the rule, in view of the single procedural defect this court will examine the claimed error in the refusal of this instruction. *Harris v. Woolworth,* 824 S.W.2d 31, 34[6] (Mo.App.1991).

■ Counsel for Dillard told the jury in final argument that in his opinion Dillard would suffer loss of future wages in the amount of $10.00 per hour for the rest of his life. Counsel stated the total loss for past and future wages was $231,300. Santa Fe objected without avail to this argument. The court gave the damage instruction mandated by MAI 8.02 (1991) which allowed the jury to award damages which it believed Dillard had sustained and was reasonably certain to sustain in the future. Santa Fe contended at the instruction conference and renews its contention on appeal that there was no evidence to support a submission of future loss of wages. In *Anderson v. Burlington Northern R.R.,* 700 S.W.2d 469, 476[11, 12] (Mo.App.1985), *cert. den.,* 476 U.S. 1116, 106 S.Ct. 1974, 90 L.Ed.2d 657 (1986), the court stated:

The extent of future harm to the earning capacity of the injured person is measured by the difference as of the time of trial between the value of plaintiff's services as they would have been in view of the injury and as they would have been had there been no injury.

The court further observed that future loss of wages is not to be based upon speculation and conjecture, but must be established with reasonable certainty upon substantial evidence.

In this case Dillard had no evidence whatever upon which to base future loss of wages. The only evidence of future damage was the injury to his wrist and the limitation of motion in his wrist. There was no evidence as to what work he would be unable to perform in the future, nor any evidence of how much he might reasonably be expected to earn in the future. The only mention of the existence and amount of future wages was the argument of counsel. It requires no citation of authority to state that this did not constitute evidence upon which the jury could return a verdict.[1]

Santa Fe offered instruction "A" which was in the form of MAI 34.02 (1991) which would have advised the jury that the issue of Dillard's future earnings loss was withdrawn from the case and the jury was not to consider such issue in arriving at a verdict. The committee comment to MAI 34.02 states:

> While MAI 34.02 is called a "withdrawal" instruction, its use is not limited to withdrawing evidence which is accidently or improperly admitted. It is intended rather to clarify what the jury is to consider in assessing damages. Instructions patterned after MAI 34.01 are intended to withdraw a specific matter which might otherwise mislead the jury.

The issue of Dillard's future loss of wages was not properly before the jury because there was no evidence from which the jury could determine the extent of those wages. Under the committee comment an instruction in the form of MAI 34.02 was proper to withdraw from the jury the issue of future loss of wages when a consideration of that issue would mislead the jury into assessing damages without evidence upon which to make a finding of the amount of such wages.

Because there was no evidence of future loss of wages, the court erred in failing to give instruction "A." The prejudice arising from the failure to give this instruction is patent from the argument of counsel. It is clear the jury assessed future loss of wages based purely on speculation and conjecture.

It is not necessary to address the other points raised by Santa Fe because such matters need not arise on retrial. In any event, the parties have the benefit of the briefs on those points.

For the error in refusing to give instruction "A", the judgment is reversed and this cause is remanded for further proceedings.

All concur.

---

1. Dillard admitted during trial that he was no longer employed by Santa Fe and would not be employed by it in the future. The court refused all attempts by Santa Fe to show that Dillard was no longer employed by it because Dillard had failed a drug test which he was required to pass in order to be employed by Santa Fe or any railroad.