**Anthony FUTRELL,**
**Plaintiff/Respondent,**

v.

**LUHR BROS., INC., Defendant/Appellant.**

**No. 67863.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 2, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 7, 1996.

Application to Transfer Denied
March 26, 1996.

---

**1.** *Olds* involved § 564.011.1 RSMo 1978; that statute is identical to the 1994 provision.

James W. Herron, Richard A. Ahrens and Ronald A. Norwood, Lewis, Rice & Fingersh, L.C., St. Louis, for appellant.

George L. Fitzsimmons and Patrick J. Hagerty, Gray & Ritter, P.C., St. Louis, for respondent.

CRANDALL, Judge.

Defendant, Luhr Bros., Inc., appeals from the judgment of the trial court, entered pursuant to a jury verdict, in favor of plaintiff, Anthony Futrell, in an action under the Jones Act, 46 App.U.S.C. § 688. The jury assessed damages at $2,000,000.00. We affirm.

The evidence established that on April 24, 1990, plaintiff was employed by defendant, Luhr Bros., Inc. (Luhr), as a deckhand on a towboat owned by Luhr. The towboat was dropping off six empty barges at Luhr's yard located on the Red River in Alexandria, Loui-

siana. Plaintiff was disconnecting the towboat from the barges by taking cables, called "face wires," off the barges and putting them on the deck of the towboat. While the wires were hanging loose into the river, the towboat's captain, Vernon Raines, moved the towboat into the current of the river. The wire plaintiff was trying to pull out of the water caught behind a defective rubber bumper on the side of the towboat and became snagged. When plaintiff experienced difficulty retrieving the cable, another deckhand helped him pull it in. On the second attempt to free the cable, the cable loosened, causing plaintiff and the other deckhand to fall backwards. Plaintiff fell on a "pelican hook," a safety device which released the tow in the event of an emergency, and twisted his leg and ankle.

The accident occurred at about 9:30 a.m. the morning of April 24. At approximately 6:00 p.m. that same day, plaintiff indicated to Raines that he wished to leave the boat to seek medical attention. After several plans to get plaintiff off the towboat proved unworkable, plaintiff finally left the boat on April 26, 1990, at about 8:30 a.m.

Later, plaintiff was diagnosed with a fracture of the fibula and a disruption of the syndesmosis, which is an area in the ankle between the leg bone and the foot. He underwent surgeries in April 1990 and again in December 1990, and unsuccessfully attempted physical therapy. In 1993, plaintiff's leg became infected; and in August 1993, the leg was amputated six inches below the knee. In September 1994, another surgery was necessary and another inch was removed from plaintiff's leg.

Plaintiff originally brought an action in two counts: Count I against Luhr under the Jones Act and Count II against Raines for false imprisonment. Luhr and Raines filed motions to dismiss or to sever. They alleged that venue was improper in the City of St. Louis, where Luhr maintained a registered agent; and that the joinder of two separate claims did not create venue in the City of St. Louis. Plaintiff then filed a First Amended Petition, adding Luhr as a defendant on Count II for false imprisonment. Luhr and Raines again filed motions to dismiss, alleging that the joinder of Luhr in Count II was pretensive in order to fix venue in the City of St. Louis. The court denied the motions. Luhr and Raines then asserted lack of venue as an affirmative defense. In a Second Amended Petition, plaintiff added another count against Luhr, alleging negligence under the Jones Act for failure to provide prompt medical treatment to plaintiff. Luhr and Raines again asserted lack of venue as an affirmative defense and raised the issue in trial and post-trial motions.

At the close of his evidence, plaintiff dismissed his false imprisonment claim against Luhr and Raines. He submitted his claim against Luhr to the jury. The verdict director required the jury to determine whether Luhr was negligent for failing "to provide reasonably safe methods of work." The jury returned a verdict in favor of plaintiff on that claim and assessed damages in the amount of $2,000,000.00. The trial court entered judgment in accordance with the verdict.

In its first point, Luhr contends the trial court erred in submitting Instruction No. 8, plaintiff's verdict director, to the jury, because the instruction did not include the material element of Luhr's actual or constructive knowledge of the condition which made the work methods unsafe.

The court submitted the following verdict directing instruction, patterned on MAI 24.01 [1992 Revised]:

Instruction No. 8

Your verdict must be for plaintiff ... if you believe:

First, defendant Luhr ... failed to provide reasonably safe methods of work, and

Second, defendant Luhr ... was thereby negligent, and

Third, such negligence resulted in whole or in part in injury to plaintiff. . . .

Luhr argues the instruction should have been modified to contain another paragraph requiring the jury to determine whether Luhr had actual or constructive knowledge of the condition of the defective rubber bumper which made the methods of work unsafe.

The Notes on Use to MAI 24.01 [1] point out that the approved instruction sets forth the "specifications of negligence ... [that] concern conditions of which the defendant had constructive notice...." MAI 24.01 [1992 Revised], Notes on Use 2. The Notes on Use require that the approved MAI instruction be modified with an additional paragraph only if the "plaintiff submits some act of negligence, constructive knowledge of which is not chargeable to the [defendant]...." MAI 24.01 [1992 Revised], Notes on Use 2.

Luhr relies on *Qualls v. St. Louis Southwestern Ry. Co.*, 799 S.W.2d 84 (Mo.App. 1990) to support its position that if plaintiff did not show it had actual knowledge of the negligently produced condition, the additional paragraph in the Notes on Use to MAI 24.01 was required. In *Qualls*, a railroad worker was injured when he fell on ice and snow which had accumulated on a bridge. *Id.* at 85. The court determined that under the circumstances of *Qualls*, there was an issue of fact as to the defendant's actual or imputed knowledge of the accumulated ice and snow; and the defendant's knowledge was an essential element of Qualls' case that must be submitted to the jury. *Id.* at 87.

In the instant action, Luhr was chargeable with constructive knowledge of failing to provide reasonably safe *methods* of work. It was not charged with knowledge of the existence of the *condition* of the defective rubber bumper. In contrast to *Qualls*, there was no extraneous event causing a condition, such as ice and snow, of which it would be necessary to establish Luhr's knowledge. Plaintiff merely had to prove that Luhr's methods of work were negligent, not that it knew or should have known that its methods were negligent.

The evidence was that Raines, the towboat captain employed by Luhr, moved the towboat into the river waters while the wires were still hanging into the water. Raines frequently made deckhands retrieve the cables while the towboat was moving because he was in a hurry. The current pushed the cable behind the bumper on the side of the towboat and held it there, making it difficult for plaintiff to retrieve it onto the deck. An expert testified that moving the towboat while a deckhand was in the process of trying to pull in the lines was not good marine practice and was dangerous because the cable could catch on any number of things. The expert stated that Raines did not use the degree of care a prudent boat operator would use under similar circumstances.

Because Raines had actual knowledge of his methods of work which required deckhands to pull lines onto the deck while the boat was in motion, Luhr, as the employer of Raines, was charged with constructive knowledge of the methods which constituted the negligence. The additional paragraph set forth in the Notes on Use to MAI 24.01 requiring the submission of the issue of Luhr's knowledge to the jury was only necessary if Luhr was *not* chargeable with constructive knowledge of its failure to provide safe methods of work. Because Luhr had constructive knowledge of the methods, MAI 24.01 was the proper instruction and no additional paragraph submitting the issue of Luhr's knowledge was needed. Therefore, given the facts of this case, the modification to MAI 24.01 was not warranted.

In addition, Luhr defended the conduct of moving the towboat and pointed to its accident-free record as indicative of the safety of its methods of work. In his testimony, Raines stated his procedures were not dangerous and he had used those methods for over 30 years without incident. Because Luhr chose to defend the issue of the safety of its methods of work, the verdict director was proper. *See, e.g., Dunn v. St. Louis–San Francisco Ry. Co.*, 621 S.W.2d 245, 255 (Mo.Banc 1981) (where defendant-railroad sought to justify the method employed to

1. MAI 24.01 [1992 Revision] is the verdict directing instruction for submitting a case under the Federal Employees' Liability Act (FELA), 45 U.S.C. §§ 51, *et seq.* (1994), where the plaintiff alleges the employer failed to provide a safe place to work. Here, plaintiff brought the present action under the Jones Act which affords seamen the same rights and remedies for personal injury provided to railway workers pursuant to FELA and incorporates by reference FELA. 46 App.U.S.C. § 688 (1994). In addition, Missouri decisions dealing with FELA cases are controlling in cases brought under the Jones Act.

remove the lining from train cars, the allegedly unsafe method of work, the verdict directing instruction, patterned on MAI 24.01 but without the element of the railroad's knowledge, properly submitted the issue to the jury).

The trial court did not err in submitting Instruction No. 8 to the jury. Luhr's first point is denied.

In its second point, Luhr contends the trial court erred in failing to dismiss plaintiff's action for improper venue or to transfer the action to the proper court. Plaintiff claims venue was pretensive because plaintiff's joinder of Raines as a defendant was done solely to create venue in the City of St. Louis under § 508.010, RSMo (1994), the general venue statute.[2]

Courts will not permit plaintiffs to engage in the pretense of joining defendants for the sole purpose of obtaining venue. The party claiming that joinder is pretensive bears the burden of persuasion and proof. *State ex rel. Malone v. Mummert*, 889 S.W.2d 822, 824 (Mo. banc 1994). The test for pretensive joinder is an objective one, requiring a realistic belief under the law and evidence that a valid claim exists. *Id.* Thus, there are two possible avenues for a party to attack venue on the ground that it is pretensive: (1) that the facts pleaded in the petition are not true; and (2) that the facts, even if true, do not support a valid claim based on substantive law. *Id.* at 825.

Luhr attacked venue on the basis that the facts pleaded in the false imprisonment count of plaintiff's petition were untrue, not on the failure to make a case under the substantive law. Luhr claims that plaintiff's deposition testimony contradicted allegations in his petition that Raines refused his requests to seek medical attention on shore and restrained him on the towboat against his will.

Luhr failed, however, to present the venue issue properly to the trial court. Luhr offered no evidence to establish that the pleaded facts were untrue and could not be proven at trial. Although Luhr refers to plaintiff's deposition testimony as evidence of the falsity of the pleaded facts, the record indicates that the deposition was never before the trial court.[3] Thus, Luhr failed to sustain its burden of proof that venue was pretensive. Luhr's second point is denied.

In its final point, Luhr claims the trial court erred in failing to grant its motions for directed verdict and for judgment notwithstanding the verdict because plaintiff failed to make a submissible case, in that there was no evidence that Luhr had actual or constructive knowledge that its methods of work were not reasonably safe. In view of our holding under point one, we find that the judgment of the trial court is supported by substantial evidence and is not against the weight of the evidence. No error of law appears. An opinion on this point would have no precedential value. Luhr's third point is denied pursuant to Rule 84.16(b).

The judgment of the trial court is affirmed.

CRAHAN, P.J., and DOWD, J., concur.

**2.** When a suit is brought against one or more corporations and one or more individuals, the general venue statute, § 508.010, rather than the corporation venue statute, § 508.040, RSMo (1994), applies. *Sledge v. Town & Country Tire Centers, Inc.*, 654 S.W.2d 176, 178 (Mo.App. 1983). When an action is against one or more corporations and one or more individuals, the county of residence for the corporation for purposes of the general venue statute is the county in which it maintains its registered agent. *State ex rel. Parks v. Corcoran*, 625 S.W.2d 686, 688 (Mo.App.1981).

**3.** The trial court's ruling on the pre-trial motion actually took place several months prior to plaintiff's deposition.