Timothy P. HEDGECORTH,
Plaintiff/Respondent,

v.

UNION PACIFIC RAILROAD
COMPANY, Defendant/Appellant.

No. ED 86817.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 22, 2006.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 11, 2006.

Application for Transfer Denied
Jan. 30, 2007.

Patrick J. Hagerty, St. Louis, MO, for respondent.

Tracy J. Cowan, Karen M. Volkman, Thompson Coburn LLP, St. Louis, MO, for appellant.

KATHIANNE KNAUP CRANE, Presiding Judge.

Plaintiff, a railroad employee, filed a lawsuit against his employer, the defendant railroad, under the Federal Employers' Liability Act [FELA], 45 U.S.C. sections 51, *et. seq.*, to recover damages for personal injuries suffered from exposure to asbestos. The jury returned a verdict in plaintiff's favor upon which the trial court entered judgment. On appeal, the railroad claims that the trial court erred 1) in denying its motion for JNOV because, it argues, plaintiff's evidence established only a mere possibility of exposure to asbestos, and 2) in refusing to give the railroad's fear of developing cancer instructions. We affirm.

## FACTUAL BACKGROUND

### 1. The Parties

Plaintiff, Timothy P. Hedgecorth, was an employee of defendant, Union Pacific Railroad Company (Union Pacific), and its predecessor, Missouri Pacific Railroad Company (Missouri Pacific), from 1971 through the time of trial. Missouri Pacific and Union Pacific merged in the mid–1980s. From 1971 until 1983, plaintiff worked on the fifth floor of Missouri Pacific's twenty-two-story office building in St. Louis, Missouri. From 1983, until the building closed in 2004, plaintiff worked on other floors in the building.

### 2. Chronology

Prior to 1970, insulation-wrapped pipes ran under the building's ceilings. These pipes were later covered by dropped ceilings. Sometime after 1971, Missouri Pacific engaged in a remodeling project that involved removing the dropped ceilings and drilling through the floors to run computer wiring.

When Missouri Pacific was removing the dropped ceiling on the fifth floor and drilling through the sixth floor to the fifth floor ceiling in order to run the computer wiring, plaintiff was working on the fifth floor.

When the ceiling was removed, the insulation-wrapped pipes in the ceiling were exposed. The insulation around the pipes was in very poor condition, chipping and coming loose. During that construction, which lasted close to a year, dust and larger particles would fall from the ceiling onto plaintiff's and his co-workers' desks. Every morning, plaintiff and his co-workers would have to wipe away a thick, heavy coating of dust and other particles on their desks with wet towels. The dust and debris collected on the desks several times a day.

In January 1988, Harmon Engineering Associates, Inc. conducted an asbestos survey of the building. Harmon found white to gray paper type insulation material on the straight portion of almost all steam piping and approximately half of the domestic water piping. All forty-three samples taken of this material contained asbestos ranging from fifty-five to one hundred percent. Harmon found white, gray or tan cementitious pipe fitting insulation on the pipe joints, fittings, and valves of almost all of the steam, chilled water, and domestic water piping. Fifty-one of fifty-two samples of this material contained asbestos ranging from twenty to seventy-eight percent. The water piping insulation was moderately friable in fair to poor condition, and was found above the ceiling in the occupied floors one through twenty-two. The steam piping insulation was also moderately friable in fair to poor condition, and was found in the main pipe chase. Additionally, there were asbestos-wrapped chilled water pipes in the main pipe chases and branches to the air handling units on each floor.

The survey reported that although the pipe insulation in the ceiling was protected by the dropped ceiling, the potential for exposure may be increased when disturbed by physical damage or by improperly conducted maintenance operations. The survey recommended the removal of the asbestos-wrapped pipes above the dropped ceilings on all floors.

The "Union Pacific St. Louis Office Building Asbestos Operations and Maintenance Plan" (the Asbestos Plan), dated January 1990, indicated that most of the pipe and duct insulation in the building contained asbestos greater than one percent by volume. The Asbestos Plan assessed the condition of the asbestos-containing materials in the building from "fair" to "significantly damaged." The Asbestos Plan indicated that routine maintenance tasks could disturb existing asbestos-containing pipe and duct insulation, including electrical service connections, cable pulling through pipe chases, conduit runs through pipe chases, sprinkler system repair, HVAC equipment balancing, and any work in which asbestos insulation materials could be accidentally or intentionally disturbed.

In 1996, AMI Group, Inc. provided a Periodic Reassessment of asbestos in the building for Union Pacific. The reassessment indicated that the pipe/duct insulation in the attics was in poor condition with large amounts of debris and dust, which was a cause for concern because the dust was pulled down the pipe chases where it had the potential to spread throughout the building.

In the late 1990s, Union Pacific began the process of having contractors remove asbestos from the building. Among other notices, Union Pacific notified employees that asbestos was being removed from the building, including the fifth floor in the area where plaintiff had previously worked, as well as the eighth floor computer room where plaintiff was then working. Union Pacific also announced that asbestos was being removed from the air handling system.

Prior to July 2000, plaintiff had a chest x-ray taken that was positive for asbestosis. On July 3, 2000, plaintiff consulted Jill Ohar, M.D., a board-certified physician in internal medicine and pulmonary medicine, who had researched and published in the area of asbestos-related lung diseases. At the time of plaintiff's examination, Dr. Ohar was a pulmonary specialist at St. Louis University. Dr. Ohar advised plaintiff that he had a mild case of asbestosis, and described the serious health problems, including cancer, that were associated with asbestos exposure.

In her videotaped deposition at trial, Dr. Ohar explained asbestosis as the scarring in the lungs that is caused by the inhalation of asbestos fibers and the resulting inflammation. Dr. Ohar testified that inhalation of asbestos fibers causes an inflammatory response in the lungs. Some fibers are cleared, but a large number are retained in the lungs and continue to incite ongoing inflammation that eventually results in scarring. Dr. Ohar further explained that to make a diagnosis of asbestosis, there must be 1) inhalation of asbestos fibers or an exposure, 2) a minimum latency period of ten years, and 3) x-ray evidence of scarring in the lungs or pathologic evidence. Dr. Ohar elaborated that the latency period is required because it takes at least ten years for the scarring to develop from the inflammation caused by inhaled fibers.

Dr. Ohar testified that she obtained an exposure history from plaintiff. Plaintiff told her about the constant remodeling and how he would enter his work area and find his computer and desk covered with thick dust from the remodeling. He also told her about Union Pacific's subsequent efforts to clean out asbestos tiles and remove asbestos from the dropped ceiling and around pipes above him. Dr. Ohar reported that plaintiff's x-ray showed mild scarring on the lungs and that two other doctors who read the x-ray, including a board-certified radiologist and a B-reader, concurred.

Dr. Ohar gave her opinion to a reasonable degree of medical certainty that plaintiff had a very mild case of asbestosis on July 3, 2000. She based her opinion on her examination and testing of plaintiff; plaintiff's description of his history of asbestos exposure; the latency period; the radiographic findings, including the chest x-ray that demonstrated abnormalities consistent with asbestosis; and her medical background. Dr. Ohar further testified that after reviewing the medical reports of Union Pacific's experts, her diagnosis was unchanged.

Dr. Ohar testified that exposure to asbestos under the circumstances described by plaintiff would cause plaintiff's asbestosis. Dr. Ohar also testified that if the dust on plaintiff's desk had been asbestos-related dust, then the asbestos waste could have caused exposure levels that were as bad as that caused by the actual removal of asbestos from the pipes. Dr. Ohar cited as authority several published papers that demonstrated that sweeping or cleaning up asbestos waste caused these similar exposure levels.

## PROCEDURAL BACKGROUND

On February 1, 2002, plaintiff filed a petition against Union Pacific to recover damages under the Federal Employers' Liability Act [FELA], 45 U.S.C. section 51, et. seq., for his injuries from asbestos exposure. The case was tried before a jury. During the instruction conference, Union Pacific offered two not-in-MAI instructions addressing recovery of damages based on emotional distress from fear of developing cancer, which the trial court rejected. The jury returned a verdict assessing eighty percent fault to Union Pacific and twenty

percent fault to plaintiff. The jury found the total amount of plaintiff's damages, disregarding plaintiff's fault, to be $300,000.00. The trial court entered judgment against Union Pacific in the amount of $240,000.00. Union Pacific raises two points on appeal.[1]

## DISCUSSION

### I. Submissibility

■ In its first point, Union Pacific asserts that the trial court erred in denying its motion for judgment notwithstanding the verdict because plaintiff failed to make a submissible case in that plaintiff's evidence established only a mere possibility of asbestos exposure. Union Pacific argues specifically that Dr. Ohar's diagnosis of asbestosis could not be considered evidence of plaintiff's exposure to asbestos because Dr. Ohar's diagnosis assumed that plaintiff had been exposed to asbestos, based on plaintiff's self-reported history of exposure. Union Pacific further argues that plaintiff's remaining evidence of his alleged asbestosis is speculative because plaintiff failed to establish that he was exposed to airborne asbestos fibers, and Union Pacific's evidence that plaintiff was not exposed to asbestos was not rebutted.

■ We review the trial court's denial of a motion for judgment notwithstanding the verdict to determine if the plaintiff made a submissible case. *Giddens v. Kansas City Southern Ry. Co.*, 29 S.W.3d 813, 818 (Mo. banc 2000). A plaintiff makes a submissible case if each and every fact essential to liability is predicated on legal and substantial evidence. *Id.* In determining submissibility, we view the evidence and all reasonable inferences in the light most favorable to the verdict, and we dis-

regard all contrary evidence and inferences. *Id.* Whether evidence is substantial and whether the inferences drawn are reasonable are questions of law that we review *de novo*. *Savory v. Hensick*, 143 S.W.3d 712, 716 (Mo.App.2004). We will not reverse a jury's verdict unless there is a complete absence of probative fact to support the jury's conclusion. *Giddens*, 29 S.W.3d at 818.

■ In determining whether plaintiff produced sufficient evidence to make a submissible case under FELA, we apply federal law. *Urie v. Thompson*, 337 U.S. 163, 174, 69 S.Ct. 1018, 1027, 93 L.Ed. 1282 (1949); *Briggs v. Kansas City Southern Ry. Co.*, 925 S.W.2d 908, 911 (Mo.App. 1996). A trial court should submit a case to the jury if there is any evidence to support the employer's negligence. *Zibung v. Union Pacific R. Co.*, 776 S.W.2d 4, 5 (Mo. banc 1989). To make a submissible FELA case, an employee must show that 1) the employer had a duty to provide a reasonably safe work place, 2) the employer's lack of care played some part, however slight, in producing the injury, and 3) the injury was reasonably foreseeable. *Ramsey v. Burlington North. & Santa Fe Ry.*, 130 S.W.3d 646, 651 (Mo. App.2004). Evidence of an employer's negligence can be slight or minimal. *Zibung*, 776 S.W.2d at 5.

It is well established that the quantum of evidence required to establish liability in a FELA case is much less than in an ordinary negligence action. *Harbin v. Burlington Northern R.R. Co.*, 921 F.2d 129, 131 (7th Cir.1990). A trial judge must submit a FELA case to the jury when there is even slight evidence of negligence. *Id.* The test is simply

---

**1.** We do not review errors raised in the argument portion of a brief that are not set out in the point relied on. *Chancellor Development*

*Co. v. Brand*, 896 S.W.2d 672, 678 (Mo.App. 1995).

whether the evidence justifies with reason the conclusion that employer negligence played any part, even the slightest, in producing the employee's injury. *Rogers v. Missouri Pac. R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957). *Duncan v. American Commercial Barge Line*, 166 S.W.3d 78, 83 (Mo.App.2004). *See also Giddens*, 29 S.W.3d at 818; *Ramsey*, 130 S.W.3d at 651.

■■■ Asbestosis is a cognizable injury under FELA. *Norfolk & Western Ry. Co. v. Ayers*, 538 U.S. 135, 148, 123 S.Ct. 1210, 1218, 155 L.Ed.2d 261 (2003).

Union Pacific first argues that plaintiff did not make a submissible case because Dr. Ohar did not give an opinion on whether plaintiff had been exposed to asbestos, and her opinion that plaintiff has asbestosis is not in itself proof that plaintiff was exposed to asbestos because her diagnosis was based on plaintiff's self-reported history of exposure. This argument does not affect the submissibility of plaintiff's case because plaintiff did not depend on Dr. Ohar to give an opinion that he was exposed to asbestos, and, as set forth below, plaintiff adduced substantial evidence from which the jury could infer exposure.

This takes us to Union Pacific's second argument under this point, which is that plaintiff's other evidence of his alleged asbestos exposure was speculative. Union Pacific contends that none of plaintiff's evidence supported an inference that plaintiff was exposed to airborne asbestos fibers. We disagree.

Plaintiff adduced evidence of the presence of asbestos throughout the building, including in the insulation on the overhead pipes and in the air handling system. Plaintiff also adduced evidence of the construction work around the asbestos-insulated pipes in the 1970s that created substantial dust on a daily basis in plaintiff's work area. The Asbestos Plan indicated that electrical work and drilling around asbestos-insulated pipes could disturb the asbestos. Dr. Ohar testified that inhalation of asbestos fibers causes asbestosis, and that if the dust created in plaintiff's work environment contained asbestos fibers, exposure to asbestos under the circumstances described by plaintiff would have caused plaintiff's asbestosis. There was sufficient evidence from which a jury could find asbestos was present, disturbed, and released in plaintiff's work environment, and that plaintiff was therefore exposed to asbestos.

Union Pacific claims that it produced unrebutted evidence that the asbestos-containing materials in the building produced only a miniscule level of airborne asbestos fibers. Under our standard of review, we do not consider Union Pacific's contrary evidence and inferences. *Giddens*, 29 S.W.3d at 818. We disregard all evidence that does not support a plaintiff's case. *See Steward v. Goetz*, 945 S.W.2d 520, 528 (Mo.App.1997). There was sufficient evidence of causation to submit the issue for the jury. Point one is denied.

## II. *Refusal of Instructions*

■■■ In its second point, Union Pacific first asserts that the trial court erred in refusing to give to the jury either of its proposed not-in-MAI instructions explaining when damages for emotional distress based on a fear of developing cancer may be recovered. Union Pacific argues that it was entitled to jury instructions that reflected the holding in *Ayers*, 538 U.S. at 157, 123 S.Ct. 1210 that FELA permits damages to be recovered for emotional distress based on a fear of developing cancer if that fear is "genuine and serious."

Union Pacific complains that the following proffered instructions were not submitted to the jury:

### Instruction No. A

In determining whether plaintiff has suffered emotional distress resulting from any reasonable fear of developing cancer as a result of his diagnosis of asbestosis, you must determine whether he has demonstrated that his fear is genuine and serious. In order to award damages to plaintiff for any emotional distress, you must be persuaded, by a preponderance of the evidence, that his emotional distress is an actual injury.

In making this determination, you may take into account whether or not plaintiff has voiced more than a general concern about his future health, whether or not he has suffered from insomnia or other stress-related conditions, whether or not he has sought psychiatric or medical attention for his symptoms, whether he has consulted counselors or ministers concerning his fear, whether he has demonstrated any physical symptoms as a result of his fear, and whether he has produced witnesses who can corroborate his fear.

Unless you determine that their fear is genuine and serious, and he has suffered actual emotional injury as a result of this fear, you cannot find for the Plaintiffs.

### Instruction No. B

In order to find in favor of plaintiff for emotional distress resulting from any reasonable fear of developing cancer as a result of asbestosis, you must believe:

First, plaintiff suffers actual emotional injury as a result of his fear of cancer relating to asbestosis; and

Second, plaintiff has taken actions indicating more than a general concern about his future health or has demonstrated physical symptoms as a result of his fear of cancer.

The court rejected these instructions and gave Union Pacific's Instruction 9, which was a comparative fault instruction based on MAI 8.02.[2]

■■■ The propriety of jury instructions on the measure of damages in FELA cases is a substantive issue governed by federal law. *See Clark v. Missouri & Northern Arkansas R.R.*, 157 S.W.3d 665, 671 n. 3 (Mo.App.2004). However, the form of the instructions and the manner in which the substantive law is submitted to the jury in FELA cases are procedural issues governed by state law. *Dunn v. St. Louis–San Francisco Ry. Co.*, 621 S.W.2d 245, 254 (Mo. banc 1981); *Cupp v. National R.R. Passenger Corp.*, 138 S.W.3d 766, 773 n. 1 (Mo.App.2004). The use of instructions approved by the Missouri Supreme Court for use in FELA cases "is mandatory to the exclusion of all others." *Griffith v. St. Louis–San Francisco R. Co.*, 559 S.W.2d 278, 280 (Mo.App.1977), *cert. denied*, 436 U.S. 926, 98 S.Ct. 2821, 56 L.Ed.2d 769 (1978). Thus, if MAI 8.02 is

**2.** Instruction No. 9

If you assess a percentage of fault to defendant, then, disregarding any fault on the part of plaintiff, you must determine the total amount of plaintiff's damages to be such sum as will fairly and justly compensate plaintiff for any damages you believe he sustained and is reasonably certain to sustain in the future as a result of the occurrence mentioned in evidence. You must state such total amount of plaintiff's damages in your verdict.

In determining the total amount of plaintiff's damages you must not reduce such damages by any percentage of fault you may assess to plaintiff. The judge will compute plaintiff's recovery by reducing the amount you find as plaintiff's total damages by any percentage you assess to plaintiff. Any award of future pecuniary damages must be included at present value. Any award you make is not subject to income taxes.

applicable, it must be given. *Gilliam v. Chicago & North Western Transp.,* 859 S.W.2d 155, 161–62 (Mo.App.1993).

In FELA cases, MAI 8.02 governs damages for an injury to an employee. *Id.* "Other than the references to taxation, present value, and mitigation of damages, it is essentially the same as MAI 4.01 with the exception that the word 'direct' is deleted from the fifth line of MAI 4.01." MAI 8.02, Committee Comment (1996 Revision). MAI 8.02, like MAI 4.01, does not list or explain the elements of damages. This is to avoid the risk "of the jury being improperly instructed on damages not supported by the record." MAI 4.01, Committee Comment (2002 Revision). It is anticipated that counsel will tell the jury in argument what the lawful items of damages are and which damages are supported by the record. *Id.; see also* MAI, Why and How to Instruct a Jury, LXXII (6th ed.2002).

■■■■ In this case, MAI damage instruction 8.02 was given; any further explanation by instruction was not acceptable procedure under MAI. *See Dunn,* 621 S.W.2d at 253; *Marshell v. Burlington Northern, Inc.,* 637 S.W.2d 168, 169 (Mo. App.1982); *Brazell v. St. Louis Southwestern Ry. Co.,* 632 S.W.2d 277, 285 (Mo.App. 1982); Rule 70.02(b). MAI 8.02 allowed counsel to argue the facts of pain and suffering to the jury, including emotional distress. *See Duncan,* 166 S.W.3d at 86–87 (involving same language in MAI 8.01). Under MAI practice, emotional distress resulting from plaintiff's fear of developing cancer was submitted by the "any damages" language in MAI 8.02, and the detail of these damages was reserved for counsel's argument.

■■■ Union Pacific argues that *Ayers* requires an addition to the MAI instruction. We have no authority to decide that an applicable MAI instruction must be supplemented to conform to case law. *Marshell,* 637 S.W.2d at 169. *See also Botanicals on the Park, Inc. v. Microcode,* 7 S.W.3d 465, 470 (Mo.App.1999). If we believe that the MAI instructions misstate or do not fully state the law, our only course of action is to transfer the appeal to the Missouri Supreme Court. *Lindsay v. McMilian,* 649 S.W.2d 491, 494 (Mo.App. 1983).

We conclude that there is no reason to transfer this appeal because *Ayers* does not require not-in-MAI instructions detailing or explaining damages based on a fear of developing cancer. In *Ayers,* plaintiffs had been diagnosed with asbestosis caused by exposure to asbestos at their workplace. 538 U.S. at 141, 123 S.Ct. 1210. Plaintiffs pursued a claim for damages in state court, including damages for mental anguish, resulting from their fear of developing cancer. *Id.* at 142, 123 S.Ct. 1210. The railroad employer sought a jury instruction that disallowed fear of cancer damages except · for those plaintiffs who proved both "an actual likelihood of developing cancer" and "physical manifestations" of the alleged fear. *Id.* at 143, 123 S.Ct. 1210. The trial court rejected this instruction, and instead, instructed that "[A]ny plaintiff who has demonstrated that he has developed a reasonable fear of cancer that is related to proven physical injury from asbestos is entitled to be compensated for that fear as a part of the damages you may award for pain and suffering." *Id.*

The Court held that the "mental anguish damages resulting from the fear of developing cancer may be recovered under the FELA by a railroad worker suffering from the actionable asbestosis caused by work-related exposure to asbestos." *Id.* at 141, 123 S.Ct. 1210. However, although the state trial court in *Ayers* had instructed the jury on damages for fear of developing

cancer, the Court in *Ayers* did not discuss or authorize jury instructions on this issue, but merely ruled on substantive law. Since the form of instructions is a matter of Missouri law, the *Ayers* holding does not require a change to the form of approved MAI instructions.

Tendered instructions A and B were not authorized by MAI. The trial court did not err in rejecting them. Point two is denied.

The judgment of the trial court is affirmed.

LAWRENCE E. MOONEY, J. and BOOKER T. SHAW, J., concur.