# SUPREME COURT OF THE UNITED STATES

## CSX TRANSPORTATION, INC. *v.* THURSTON HENSLEY

ON PETITION FOR WRIT OF CERTIORARI TO THE COURT OF
APPEALS OF TENNESSEE, EASTERN DIVISION

No. 08–1034.   Decided June 1, 2009

PER CURIAM.

The Federal Employers' Liability Act (FELA), 35 Stat. 65, as amended, provides that employees of common-carrier railroads may recover for work-related injuries caused in whole or in part by their railroad-employer's negligence. See 45 U. S. C. §§51–60. In this case respondent Thurston Hensley sued petitioner CSX Transportation, Inc., in Tennessee state court. Hensley, who was employed by CSX as an electrician, alleged that the railroad negligently caused him to contract asbestosis—a noncancerous scarring of lung tissue caused by long-term exposure to asbestos.

Hensley sought pain-and-suffering damages from CSX based on, among other things, his fear of developing lung cancer in the future. The Court addressed this subject in *Norfolk & Western R. Co.* v. *Ayers*, 538 U. S. 135 (2003), and held that those types of damages are available in certain FELA cases. The Court stated:

> "Norfolk presented the question whether a plaintiff who has asbestosis but not cancer can recover damages for fear of cancer under the FELA without proof of physical manifestations of the claimed emotional distress. Our answer is yes, with an important reservation. We affirm only the qualification of an asbestosis sufferer to seek compensation for fear of cancer as an element of his asbestosis-related pain and suffering damages. It is incumbent upon such a complain-

ant, however, to prove that his alleged fear is genuine and serious." *Id.*, at 157 (internal quotation marks, citation, and alteration omitted).

At the close of a 3-week trial, Hensley and CSX submitted proposed jury instructions to the trial court. CSX proposed two instructions—requests 30 and 33—related to Hensley's claim for fear-of-cancer damages. Request 30 stated the basic requirements to obtain those damages under *Ayers*. Supp. Tech. Record, Exh. A, p. 4 ("Plaintiff is also alleging that he suffers from a compensable fear of cancer. In order to recover, Plaintiff must demonstrate . . . that the . . . fear is genuine and serious"). Request 33 stated certain factors the jury could consider in applying the *Ayers* standard. *Id.*, at 5–6. The trial court denied both requests over CSX's objections, and the jury was not instructed as to the legal standard for fear-of-cancer damages. 17 Tr. 2410–2415; 20 *id.*, at 2903–2904. After two hours of deliberations, the jury found for Hensley and awarded him $5 million in damages.

The Tennessee Court of Appeals affirmed. 278 S. W. 3d 282 (2008). It described our opinion in *Ayers* as "specifically limit[ed]" to the "narrow issue" of whether a FELA plaintiff with asbestosis can recover for fear of cancer. 278 S. W. 3d, at 300. According to the Tennessee Court of Appeals, *Ayers* "did not discuss or authorize jury instructions on this issue, but merely ruled on substantive law." 278 S. W. 3d, at 300 (internal quotation marks omitted). The Tennessee Court of Appeals also reasoned that "little if any purpose would be served by instructing the jury that the plaintiff's fear must be 'genuine and serious.'" *Ibid.* That is because "the mere suggestion of the possibility of cancer has the potential to evoke raw emotions," and "[a]ny juror who might be predisposed to grant a large award based on shaky evidence of a fear of cancer is unlikely to be swayed by the language of *Ayers*." *Ibid.*

Instead, the Tennessee Court of Appeals stated, "it is for the courts to serve as gatekeepers" by ensuring that fear-of-cancer claims "do not *go* to the jury unless there is credible evidence of a 'genuine and serious' fear." *Ibid.*

CSX petitioned for certiorari, arguing that the Tennessee Court of Appeals misread and misapplied this Court's decision in *Ayers*. CSX's contention is correct. The ruling of the Tennessee Court of Appeals, and the refusal of the trial court to give an instruction, were clear error. Contrary to the assertion of the Tennessee Court of Appeals, the *Ayers* Court expressly recognized that several "verdict control devices [are] available to the trial court" when a FELA plaintiff seeks fear-of-cancer damages. 538 U. S., at 159, n. 19. Those "include, on a defendant's request, a charge that each plaintiff must prove any alleged fear to be genuine and serious." *Ibid.* CSX requested an instruction on the substance of the genuine-and-serious standard, and the trial court erred by not giving one.

The reasons given by the Tennessee Court of Appeals for upholding the denial of an instruction on the standard do not withstand scrutiny. The court stated that instructing the jury on the legal standard for fear-of-cancer damages would have been futile because cancer touches many lives and therefore "evoke[s] [jurors'] raw emotions." 278 S. W. 3d, at 300. This is a serious misunderstanding of the nature and function of the jury. The jury system is premised on the idea that rationality and careful regard for the court's instructions will confine and exclude jurors' raw emotions. Jurors routinely serve as impartial factfinders in cases that involve sensitive, even life-and-death matters. In those cases, as in all cases, juries are presumed to follow the court's instructions. See *Greer* v. *Miller*, 483 U. S. 756, 766, n. 8 (1987). And the trial court in this case correctly instructed the jury as to its legal duty to "follow all of the instructions." 20 Tr. 2882.

Instructing the jury on the standard for fear-of-cancer

damages would not have been futile. To the contrary, the fact that cancer claims could "evoke raw emotions" is a powerful reason to instruct the jury on the proper legal standard. Giving the instruction on this point is particularly important in the FELA context. That is because of the volume of pending asbestos claims and also because the nature of those claims enhances the danger that a jury, without proper instructions, could award emotional-distress damages based on slight evidence of a plaintiff's fear of contracting cancer. But as this Court said in *Ayers*, more is required. Although plaintiffs can seek fear-of-cancer damages in some FELA cases, they must satisfy a high standard in order to obtain them. 538 U. S., at 157–158, and n. 17. Refusing defendants' requests to instruct the jury as to that high standard would render it all but meaningless.

It is no answer that, as the Tennessee Court of Appeals stated, courts can apply the *Ayers* standard when ruling on sufficiency-of-the-evidence challenges. To be sure, *Ayers* recognized that a "review of the evidence on damages for sufficiency" is another of the "verdict control devices" available to courts when plaintiffs seek fear-of-cancer damages. *Id.*, at 159, n. 19. But a determination that there is sufficient evidence to send a claim to a jury is not the same as a determination that a plaintiff has met the burden of proof and should succeed on a claim outright. Put another way, a properly instructed jury could find that a plaintiff's fear is not "genuine and serious" even when there is legally sufficient evidence for the jury to rule for the plaintiff on the issue. That is why *Ayers* recognized that sufficiency reviews and jury instructions are important and separate protections against imposing unbounded liability on asbestos defendants in fear-of-cancer claims.

When this Court in *Ayers* held that certain FELA plaintiffs can recover based on their fear of developing cancer, it

Per Curiam

struck a delicate balance between plaintiffs and defendants—and it did so against the backdrop of systemic difficulties posed by the "elephantine mass of asbestos cases." *Id.*, at 166 (internal quotation marks omitted). Jury instructions stating the proper standard for fear-of-cancer damages were part of that balance, *id.*, at 159, n. 19, and courts must give such instructions upon a defendant's request. The ruling of the Tennessee Court of Appeals conflicts with *Ayers*. The trial court should have given the substance of the requested instructions. See also *Hedgecorth* v. *Union Pacific R. Co.*, 210 S. W. 3d 220, 227–229 (Mo. App. 2006) (same).

The petition for certiorari is granted. The motions for leave to file briefs *amici curiae* of American Tort Reform Association, et al.; Association of American Railroads; and Washington Legal Foundation are granted. The judgment of the Tennessee Court of Appeals is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

## CSX TRANSPORTATION, INC. *v.* THURSTON HENSLEY

ON PETITION FOR WRIT OF CERTIORARI TO THE COURT OF APPEALS OF TENNESSEE, EASTERN DIVISION

No. 08–1034.   Decided June 1, 2009

JUSTICE STEVENS, dissenting.

During his 33 years of employment at L&N Railroad (now CSX Transportation, Inc., or CSX), respondent Thurston Hensley was regularly exposed to a solvent that eventually caused toxic encephalopathy, an incurable and permanent form of brain damage that ended his ability to work.  He was also exposed to asbestos that gave rise to a chronic pulmonary condition known as asbestosis.  As we have previously noted, asbestosis sufferers "have a significant (one in ten) risk of dying of mesothelioma, a fatal cancer of the lining of the lung or abdominal cavity." *Norfolk & Western R. Co.* v. *Ayers*, 538 U. S. 135, 142 (2003).

In addition to claiming damages for the economic injuries caused by those two diseases, Hensley sought damages for his fear of developing cancer in the future.  At trial, CSX requested two jury instructions on this fear-of-cancer claim: The first stated that Hensley had the burden of proving "that [his] fear is genuine and serious," App. to Pet. for Cert. 70a; the second illustrated ways in which Hensley could prove that his fear was genuine and serious.[1]  The trial court rejected both instructions and in-

---

[1] CSX's second proposed charge (request 33) would have instructed the jury: "In determining whether the Plaintiff has suffered emotional distress resulting from any reasonable fear of developing cancer as a result of his diagnosis of asbestosis, you must determine whether he has demonstrated that his fear is genuine and serious. . . .  In making this determination, you may take into account whether or not the

stead charged the jury in accordance with Tennessee's Pattern Jury Instructions for pain and suffering. See App. to Brief in Opposition 14; *id.*, at 19.

The jury unanimously found CSX liable for negligently causing Hensley's brain damage and asbestosis, see App. to Pet. for Cert. 58a, and awarded him $5,000,000 in compensatory damages—an award CSX has never challenged as excessive. App. to Brief in Opposition 23. Because CSX did not request a special verdict or special interrogatory, we do not know what portion (if any) of the award was meant to compensate Hensley for his fear of developing cancer.

This Court's decision to nullify the jury's damages award rests on the premise that footnote 19 in our opinion in *Ayers* created a rule that requires trial judges, on a defendant's demand, to instruct the jury that any fear-of-cancer claim must be genuine and serious to be compensable. The footnote at issue states:

> "In their prediction that adhering to the line drawn in *Gottshall* and *Metro-North* will, in this setting, bankrupt defendants, the dissents largely disregard, *inter alia*, the verdict control devices available to the trial court. These include, on a defendant's request, a charge that each plaintiff must prove any alleged fear to be genuine and serious, review of the evidence on damages for sufficiency, and particularized verdict

---

Plaintiff has voiced more than a general concern about his future health, whether or not he has suffered from insomnia or other stress-related conditions, whether or not he has sought psychiatric or medical attention for his symptoms, whether he has consulted counselors or ministers concerning his fear, whether he has demonstrated any physical symptoms as a result of his fear, and whether he has produced witnesses who can corroborate his fear." App. to Pet. for Cert. 70a–71a; see also *Hedgecorth* v. *Union Pacific R. Co.*, 210 S. W. 3d 220, 227 (Mo. Ct. App. 2006) (noting an identical instruction requested by Union Pacific Railroad).

forms." 538 U. S., at 159, n. 19 (citations omitted).

Naturally read, this footnote merely points out that a defendant has the right to request a genuine-and-serious instruction and that, if requested, such an instruction is *available* to the trial court. It does not suggest that all requests must be granted. And it certainly does not indicate that a court's decision not to give the instruction would be treated as *per se* reversible error. That was my view of footnote 19 when I joined the *Ayers* majority.

Since *Ayers*, two state appellate courts—the Tennessee Court of Appeals in this case and the Missouri Court of Appeals in *Hedgecorth* v. *Union Pacific R. Co.*, 210 S. W. 3d 220 (2006), cert. denied, 552 U. S. ___ (2007)—have read footnote 19 as I do. These courts have understood that the primary duty of the trial court is to serve as a gatekeeper, refusing to allow the jury to award fear-of-cancer damages absent evidence that the fear was genuine and serious. Both courts affirmed decisions to reject genuine-and-serious instructions and to rely instead on general pain-and-suffering instructions to charge the jury. In so doing, they rightly noted that *Ayers* focused on whether fear-of-cancer claims were cognizable under the Federal Employers' Liability Act (FELA), 45 U. S. C. §§51–60, and that it "did not discuss or authorize jury instructions." *Hedgecorth*, 210 S. W. 3d, at 229; see 278 S. W. 3d 282, 330 (Tenn. App. 2008) (case below).

These courts have read *Ayers* correctly. Immediately after the disputed statement in footnote 19, we made clear that we were passing, "specifically and only, on the question whether this case should be aligned with those in which fear of future injury stems from a current injury, or with those presenting a stand-alone claim for negligent infliction of emotional distress." 538 U. S., at 159. In siding with the former option, we consulted and followed the common-law view that "pain and suffering damages

may include compensation for fear of cancer when that fear accompanies a physical injury." *Id.*, at 148 (internal quotation marks omitted). We had no occasion to, and therefore did not, offer a federal common-law rule that would displace the various pain-and-suffering instructions routinely given to juries. In fact, we specifically took issue with the "the dissents' readiness to 'develop a federal common law' to contain jury verdicts under the FELA." *Id.*, at 158, n. 17. Yet, inexplicably, the Court today reads *Ayers*—in dicta no less—to have done precisely what it criticized.

In its rush to reverse the Tennessee Court of Appeals, the Court issues a mandate that is bound to invite further questions. For instance, if it is *per se* error for the trial court to deny a request for a genuine-and-serious instruction, is it also *per se* error to fail to employ particularized verdict forms? After all, that too is a verdict control device listed in footnote 19. *Id.,* at 159, n. 19. How much discretion, if any, is accorded the trial court to decide which devices are necessary? Is the list of verdict-control devices identified in *Ayers* exhaustive? The risk that the Court's opinion will generate more confusion than clarity is inherent in a summary decisional process that does not give the parties an opportunity to brief and argue the merits.

A $5,000,000 verdict may well justify careful review of all claims of error. But the Court's foray into error correction is not compelled by *Ayers*. A proper reading of *Ayers* and an appropriate amount of respect for the jury in this case should have counseled the Court to stay its hand. Instead, it authorizes a fresh review of the jury's damages award in response to the possibility that the jury decided to compensate Hensley for his fear of cancer without concluding that his fear was genuine and serious. Yet, as a practical matter, it is hard to believe the jury would have awarded any damages for Hensley's fear of cancer if it did not believe that fear to be genuine and serious. The trial

court instructed the jury that while Hensley had "no obligation to prove with mathematical certainty such intangible things as pain and suffering or loss of enjoyment of life," he did have to prove "that a loss has, indeed, occurred." App. to Pet. for Cert. 62a. This is an unwise summary disposition.[2]

Accordingly, I respectfully dissent.

---

[2] Although the Court concludes that the trial court erred by not giving a genuine-and-serious charge, the question whether the instructional error was nevertheless harmless remains open to review on remand by the Tennessee Court of Appeals. Cf. *Hedgpeth* v. *Pulido*, 555 U. S. \_\_\_ (2008) *(per curiam); Neder* v. *United States*, 527 U. S. 1 (1999); *Rose* v. *Clark*, 478 U. S. 570 (1986).

# SUPREME COURT OF THE UNITED STATES

## CSX TRANSPORTATION, INC. *v.* THURSTON HENSLEY

### ON PETITION FOR WRIT OF CERTIORARI TO THE COURT OF APPEALS OF TENNESSEE, EASTERN DIVISION

No. 08–1034.   Decided June 1, 2009

JUSTICE GINSBURG, dissenting.

The Court's opinion in *Norfolk & Western R. Co.* v. *Ayers*, 538 U. S. 135 (2003), would support this plain and simple instruction: "It is incumbent upon [the plaintiff] to prove that his alleged fear [of cancer] is genuine and serious," *id.*, at 157.   The defense-oriented instructions requested, however, were far more elaborate, compare *ante*, at 2 *(per curiam)*, with App. to Pet. for Cert. 70a–71a, and the trial court rightly refused to give them.   Nothing in *Ayers* required the court to deliver, on its own initiative, a fitting substitute.   I would therefore deny the petition for certiorari and dissent from the Court's summary reversal.