Justice Stevens,
dissenting.
During his 33 years of employment at L&N Railroad (now CSX Transportation, Inc., or CSX), respondent Thurston Hensley was regularly exposed to a solvent that eventually caused toxic encephalopathy, an incurable and permanent form of brain damage that ended his ability to work. He was also exposed to asbestos that gave rise to a chronic pulmonary condition known as asbestosis. As we have previously noted, asbestosis sufferers “have a significant (one in ten) risk of dying of mesothelioma, a fatal cancer of the lining of the lung or abdominal cavity.” Norfolk & Western R. Co. v. Ayers, 538 U. S. 135, 142 (2003).
In addition to claiming damages for the economic injuries caused by those two diseases, Hensley sought damages for his fear of developing cancer in the future. At trial, CSX requested two jury instructions on this fear-of-cancer claim: The first stated that Hensley had the burden of proving “that [his] fear is genuine and serious,” App. to Pet. for Cert. 70a; the second illustrated ways in which Hensley could prove that his fear was genuine and serious.[1] The trial eourt re *844 jected both instructions and instead charged the jury in accordance with Tennessee’s Pattern Jury Instructions for pain and suffering. See App. to Brief in Opposition 14; id., at 19.
The jury unanimously found CSX liable for negligently causing Hensley’s brain damage and asbestosis, see App. to Pet. for Cert. 58a, and awarded him $5 million in compensatory damages — an award CSX has never challenged as excessive. App. to Brief in Opposition 23. Because CSX did not request a special verdict or special interrogatory, we do not know what portion (if any) of the award was meant to compensate Hensley for his fear of developing cancer.
This Court’s decision to nullify the jury’s damages award rests on the premise that footnote 19 in our opinion in Ayers created a rule that requires trial judges, on a defendant’s demand, to instruct the jury that any fear-of-caneer claim must be genuine and serious to be compensable. The footnote at issue states:
“In their prediction that adhering to the line drawn in Gottshall and Metro-North will, in this setting, bankrupt defendants, the dissents largely disregard, inter alia, the verdict control devices available to the trial court. These include, on a defendant’s request, a charge that each plaintiff must prove any alleged fear to be genuine and serious, review of the evidence on damages for sufficiency, and particularized verdict forms.” 538 U. S., at 159, n. 19 (citations omitted).
Naturally read, this footnote merely points out that a defendant has the right to request a genuine-and-serious instruc *845 tion and that, if requested, sueh an instruction is available to the trial court. It does not suggest that all requests must be granted. And it certainly does not indicate that a court’s decision not to give the instruction would be treated as per se reversible error. That was my view of footnote 19 when I joined the Ayers majority.
Since Ayers, two state appellate courts — the Tennessee Court of Appeals in this case and the Missouri Court of Appeals in Hedgecorth v. Union Pacific R. Co., 210 S. W. 3d 220 (2006), cert. denied, 552 U. S. 812 (2007) — have read footnote 19 as I do. These courts have understood that the primary duty of the trial court is to serve as a gatekeeper, refusing to allow the jury to award fear-of-cancer damages absent evidence that the fear was genuine and serious. Both courts affirmed decisions to reject genuine-and-serious instructions and to rely instead on general pain-and-suffering instructions to charge the jury. In so doing, they rightly noted that Ayers focused on whether fear-of-eancer claims were cognizable under the Federal Employers’ Liability Act (FELA), 45 U. S. C. §§ 51-60, and that it “did not discuss or authorize jury instructions.” Hedgecorth, 210 S. W. 3d, at 229; see 278 S. W. 3d 282, 300 (Tenn. App. 2008) (case below).
These courts have read Ayers correctly. Immediately after the disputed statement in footnote 19, we made clear that we were passing, “specifically and only, on the question whether this case should be aligned with those in which fear of future injury stems from a current injury, or with those presenting a stand-alone claim for negligent infliction of emotional distress.” 538 U. S., at 159. In siding with the former option, we consulted and followed the common-law view that “pain and suffering damages may include compensation for fear of cancer when that fear accompanies a physical injury.” Id., at 148 (internal quotation marks omitted). We had no occasion to, and therefore did not, offer a federal common-law rule that would displace the various pain-and- *846 suffering instructions routinely given to juries. In fact, we specifically took issue with “the dissents’ readiness to ‘develop a federal common law’ to contain jury verdicts under the FELA.” Id., at 158, n. 17. Yet, inexplicably, the Court today reads Ayers — in dicta no less — to have done precisely what it criticized.
In its rush to reverse the Tennessee Court of Appeals, the Court issues a mandate that is bound to invite further questions. For instance, if it is per se error for the trial court to deny a request for a genuine-and-serious instruction, is it also per se error to fail to employ particularized verdict forms? After all, that too is a verdict-control device listed in footnote 19. Id., at 159, n. 19. How much discretion, if any, is accorded the trial court to decide which devices are necessary? Is the list of verdict-control devices identified in Ayers exhaustive? The risk that the Court’s opinion will generate more confusion than clarity is inherent in a summary decisional process that does not give the parties an opportunity to brief and argue the merits.
A $5 million verdict may well justify careful review of all claims of error. But the Court’s foray into error correction is not compelled by Ayers. A proper reading of Ayers and an appropriate amount of respect for the jury in this case should have counseled the Court to stay its hand. Instead, it authorizes a fresh review of the jury’s damages award in response to the possibility that the jury decided to compensate Hensley for his fear of cancer without concluding that his fear was genuine and serious. Yet, as a practical matter, it is hard to believe the jury would have awarded any damages for Hensley’s fear of cancer if it did not believe that fear to be genuine and serious. The trial court instructed the jury that while Hensley had “no obligation to prove with mathematical certainty such intangible things as pain and suffering or loss of enjoyment of life,” he did have to prove *847 “that a loss has, indeed, occurred.” App. to Pet. for Cert. 62a. This is an unwise summary disposition.[2]
Accordingly, I respectfully dissent.

 CSX’s second proposed charge (request 33) would have instructed the jury: “In determining whether the Plaintiff has suffered emotional distress resulting from any reasonable fear of developing cancer as a result of his diagnosis of asbestosis, you must determine whether he has demonstrated that his fear is genuine and serious----In making this determination, you may take into account whether or not the Plaintiff has voiced more than a general concern about his future health, whether or not he has suffered from insomnia or other stress-related conditions, whether or not he has *844 sought psychiatric or medical attention for his symptoms, whether he has consulted counselors or ministers conceminghis fear, whether he has demonstrated any physical symptoms as a result of his fear, and whether he has produced witnesses who can corroborate his fear.” App. to Pet. for Cert. 70a-71a; see also Hedgecorth v. Union Pacific R. Co., 210 S. W. 3d 220, 227 (Mo. Ct. App. 2006) (noting an identical instruction requested by Union Pacific Railroad).

 Although the Court concludes that the trial court erred by not giving a genuine-and-serious charge, the question whether the instructional error was nevertheless harmless remains open to review on remand by the Tennessee Court of Appeals. Cf. Hedgpeth v. Pulido, 555 U. S. 57 (2008) (per curiam); Neder v. United, States, 527 U. S. 1 (1999); Rose v. Clark, 478 U. S. 570 (1986).